UNITED STATES BANKRUPTCY COURT
                       DISTRICT OF COLUMBIA

IN RE:                          .   Case No. 16-00222
                                .   Chapter 11
MARSHA RALLS,                   .
                                .   Washington, D.C.
                Debtor.         .   June 24, 2016
. . . . . . . . . . . . . . .

       HEARING ON MOTION FOR RELIEF FROM STAY REGARDING
       1316 31ST STREET, N.W., WASHINGTON, DC 20007,
              FILED BY BWF PRIVATE LOAN FUND, LLC
         BEFORE THE HONORABLE S. MARTIN TEEL, JR.
                UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtor:         Law Offices
                        By:  WILLIAM C. JOHNSON,
                              JR., ESQ.
                        1101 15th Street, N.W.
                        Suite 910
                        Washington, D.C. 20005

                        Pillsbury, Winthrop, Shaw &
                        Pittman, LLP
                        By:  PATRICK J. POTTER, ESQ.
                        1200 Seventeenth Street, N.W.
                        Washington, DC 20036

Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.
_____

**BOWLES REPORTING SERVICE**
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083 - BRS-CT@SBCGLOBAL.NET

1         (Proceedings commenced at 1:52 p.m.)

2             THE CLERK:  The next case on the calendar is

3  Case Number 16-222, <u>Marsha Ralls</u>.

4             The matter before the Court is a Motion for

5  Relief from Stay Regarding 1316 31st Street, N.W.,

6  Washington, DC 20007, filed by BWF Private Loan Fund,

7  LLC.

8             Will the parties please come forward and state

9  their names for appearance.

10           MR. JOHNSON:  Good afternoon, Your Honor.

11           William Johnson on behalf of the Debtor, Ms.

12  Marsha Ann Ralls.  Ms. Ralls is in the courtroom today,

13  seated there.

14           MR. POTTER:  Good afternoon, Your Honor.

15           Patrick Potter with the law firm of Pillsbury,

16  Winthrop, Shaw, Pittman, and again, on behalf of BWF,

17  the second secured party, the lienholder on the

18  Debtor's residence, and with me in the courtroom and at

19  counsel table, Your Honor, I'd like to introduce Eileen

20  O'Brien (phonetic).  Ms. O'Brien is with the law firm

21  of Bowling, Wool (phonetic) and Bowling, Wool

22  represents BWF -- represented them in the Superior

23  Court litigation, and continues to represent BWF in the

24  now D.C. -- District of Columbia Court of Appeals

25  litigation.

1          I asked her to join me today in the event that

2     -- since the lift stay -- the purpose of the lift stay

3     is actually not the property today, it's really -- the

4     focus is to allow the appeal to go forward unimpeded by

5     the automatic stay in this case.

6          I invited her to be here in the event that

7     Your Honor has any particular questions about either

8     the Superior Court litigation or the status of the

9     appeal.

10          THE COURT:  Thank you.

11          MR. POTTER:  I thought she'd be in a better

12    position to answer any of those questions than me.

13          I'm not sure whether (unintelligible) can move

14    her admission pro hac vice, whether she's a member of

15    the U.S. District Court.  She's nodding.  She is a

16    member of the U.S. District Court.

17          THE COURT:  I'll (unintelligible).  Thank you.

18          MR. POTTER:  Thank you, Judge.

19          If I may proceed?

20          THE COURT:  Yes.

21          MR. POTTER:  Your Honor, I'd like to start,

22    and since this is a Chapter 11, to do what I think in

23    my experience in this court and other courts in Chapter

24    11, is to start with a relatively brief status report

25    on the case, if I may, from the secure creditor's

1    standpoint.

2            Certainly the Debtor will be afforded, and I

3    have no objection to the Debtor giving the Court its

4    own status report, but I'd like to have 10 or 15

5    minutes of indulgence from the Court, to talk about the

6    case.

7            We don't have the opportunity to be before

8    Your Honor to talk about the case, and so I'd like to

9    give the Court an update on the events since the

10    petition was filed, if I may?

11            THE COURT:  Go ahead.

12            MR. POTTER:  Judge, the vehicle, Your Honor,

13    to -- Excuse me, I just want to grab my glasses.

14            -- that I'd like to use, is a storybook that

15    I've put together, with some tabs, which I've given an

16    identical copy to Mr. Johnson before being -- 10 or 15

17    minutes before Your Honor took the bench.

18            If I may hand it up?

19            THE COURT:  (No audible response.)

20            MR. POTTER:  So just in terms of a roadmap, so

21    Your Honor has a sense of where I'm headed with all of

22    this, which are three points that I want to -- and I --

23    and it would be -- it will be to -- through the vehicle

24    updates, in terms of, you know, what's happened in the

25    case, what's not happened in the case, and the

1    documents, I think, are the best way to do it, and the

2    complete (phonetic) points I really want to cover are,

3    one, equity and the Debtor's only -- The Debtor has

4    testified at the 341 meeting that her only asset that

5    she owns is her home, and if I can point that out to

6    you in the 341 transcript, which is in the book.

7         THE COURT:  I've got it, 341 transcript.

8         MR. POTTER:  Okay.

9         And so what I want to talk about is value

10   versus debt, in terms of equity.  That's number one.

11        Two is the Debtor's true intent in the case,

12   relative to selling her home.  Both of those issues

13   were key issues that we argued about on the first day

14   of the case, when I first, you know -- we, you know,

15   have the emergency lift stay, the hearing, and there

16   are two that are key, if not the two key components of

17   Your Honor's decision to deny the lift stay motion.

18        And then the final thing that I'd like to talk

19   about, related to, you know, the intent of the Chapter

20   11, is where I think the case is actually really

21   headed.

22        So why don't I start with equity, Your Honor.

23   Sorry to do this.  And I'm going to start with -- The

24   (unintelligible) I'm going to start with, Your Honor,

25   is with the record from the lift stay hearing.  At tab

1    -- And marked in yellow, what I'd like to draw the

2    Court's attention to, and while it seems like there's a

3    lot there, but I don't think there really is.  It all

4    fits within the categories that I've outlined.

5         And so if you'll turn to page 14 at Tab 1, and

6    I've got three or four tabs here.  These are all from

7    Your Honor's ruling based upon the argument that --

8    arguments that were made by Mr. Johnson and myself, and

9    so you see there, highlighted on page 14, Your Honor,

10   says -- the Debtor responds that she has equity in the

11   property and she wishes to use Chapter 11 to do a

12   liquidation plan.

13        And you drop down a little farther, and Your

14   Honor says:

15             "The creditor does not dispute that there is

16             substantial equity in the property."

17        Obviously it was an emergency hearing, Your

18   Honor, and we didn't have the information that we have

19   now, and we did -- certainly didn't have an evidentiary

20   record on the issue of value.

21        And then when you flip forward to page 16,

22   again, I've tabbed it and highlighted it for

23   convenience and (inaudible), Your Honor says:

24             "What she is saying is she wants to sell the

25             property in an orderly fashion pursuant to a

1              plan, instead of suffering a foreclosure

2              sale."

3         Flipping forward to page 20, we're talking

4    about the purpose of this Chapter 11 filing, Your

5    Honor, and I've highlighted some passages here, of Your

6    Honor's colloquy -- Your Honor's ruling, excuse me, and

7    you say:

8              "The Debtors are electing to attempt to use

9              Chapter 11 as a tool for selling the property

10             in order to realize equity in the property,

11             and maximize the equity in the property

12             instead of letting a foreclosure sale go

13             forward," et cetera.

14        Dropping down, Your Honor says:

15             "I think the Debtor has shown that she has a

16             good faith reason for using Chapter 11, and it

17             is not an effort to delay the creditor, other

18             than to permit the Debtor to use Chapter 11 in

19             order to attempt to sell the property and

20             maximize equity received from the property."

21        Continuing on the highlighted passage, Your

22   Honor says:

23             "And if she fails to attempt to sell the

24             property promptly, the Debtor may indeed

25             suffer the consequences."

1       So those are the passages that I wanted to

2   point out in the transcript from the first hearing, and

3   I think the two points are -- two premises and

4   conclusions are, one, that there's substantial equity

5   in the property, and that the Debtor's purpose in

6   filing this Chapter 11 was to promptly, or at least

7   Your Honor used the word "promptly," to promptly sell

8   the property.

9       Now, in terms of -- Take them out of order.

10  Maybe we'll take the value first, because it's  -- I

11  can flip a page.

12      If Your Honor flips to tab -- turns to Tab 3,

13  so this is in -- the numbers used this, so I don't -- I

14  think the number carries through the -- to the Debtor's

15  bankruptcy schedules.

16      The Debtor lists the property as being worth

17  $2,352,000.

18      Then if you turn to Tab 4, please, Your Honor,

19  it's the transcript from the 341 meeting, page 6.

20      Ms. Ralls is answering questions from Mr.

21  Jones, and this part of the -- attorney for the U.S.

22  Trustee's Office, who testifies that:

23          "The only asset I have is my home.

24          MR. JONES: Okay.  And what do you believe the

25          value of the home is?"

1          Ms. Ralls answers:

2          "I think around two and a half.

3          MR. JONES: Two and a half million?"

4          Ms. Ralls answers:

5          "Yes, sir."

6          Again, if Your Honor could please turn to page

7     44 of the same document, I've highlighted the passages

8     that I want to point out.

9          We're now -- I'm examining Ms. Ralls, and I

10    say:

11          "So you have a listing agreement with

12          someone?"

13          And Ms. Ralls responds:

14          "Yes, I do."

15          I ask:

16          "Who is the listing agreement with?"

17          And Ms. Ralls responds:

18          "Nancy Bubes."

19          I butchered the name but I'm going to stick

20    with Bubes, whether it's right or not.

21          If Your Honor then turns to --

22          THE COURT:  Well, for the record, that's

23    spelled B-U-B-E-S.

24          MR. POTTER:  I think it's B-U-B-E-S, yes.

25          And just -- I don't think I'm going to rely

1   upon them at any other point in time during this

2   hearing, but Ms. Bubes' credentials, her website, and

3   you can look, and the like, are found at Tabs 14 and 15

4   of the book.

5         And then on the next page I've highlighted

6   further questioning, page 45.  I ask:

7         "When was the contract entered -- the listing

8         agreement entered into?"

9         And Ms. Ralls answers:

10        "Today."

11        For the record, the transcript -- the 341

12   meeting occurred on June 8th.  The bankruptcy was filed

13   on May 4 of this year.

14        And then if Your Honor will turn two pages

15   ahead, to page 47, highlighted language, I'm asking the

16   question:

17        "What is the purchase price on the listing

18        agreement?"

19        And Ms. Ralls responds:

20        "I think two and a half.

21        MR. POTTER:" -- I ask the question:

22        "Two point five million dollars?"

23        And Ms. Ralls responds:

24        "Uh-huh."

25        And I ask other terms and conditions of the

1   listing agreement.

2          So those were the two pieces that we have on

3   this topic of equity.  We've got the schedules that say

4   2.35 million, and then we've got the Debtor's own

5   testimony that she believes it's worth 2.5 million

6   dollars.  That's at page 6 of the transcript, and then

7   a listing agreement that was supposedly entered into

8   for $2.5 million, with probably, in terms of sale

9   volume, the leading broker in Georgetown for this type

10  of property.

11         Now, let's compare that, Your Honor, to debts,

12  and there's a quick way to do this.  I received, last

13  night, overnight from Mr. Johnson, a payoff statement

14  from Capital One, and I think we can stipulate to it,

15  or he can -- I can hand it -- find it and hand it up,

16  but it appears that -- on the statement, that Capital

17  One is owed approximately $830,000, and that's

18  consistent with Ms. Ralls' testimony at the 341

19  meeting, and if Your Honor -- Tab 4, turn to page 21.

20         Ms. Ralls testifies:

21         "So now I saw it where the payoff amount for

22          Capital One, it says '780' but I know it's

23          830.  Eight-hundred and thirty is the payoff."

24         So I don't there's any dispute that that's the

25  range that -- the payoff for Capital One.

1          And then in terms of my client's debt, if Your

2    Honor will turn to Tab 13, we'll try to break this down

3    for you quickly, that's what I asked my client to do,

4    which is, I asked them to put together the numbers in

5    two pieces.  One is the number that is -- that reflects

6    the judgment of Judge Motley, and you'll see that

7    number is $1,343,689.07.

8          Judge Motley's judgment is in -- it's here in

9    the -- it's in these materials, Your Honor.  It's at

10   Tab 8, Tabs 8A and 8B, and that's where those numbers

11   come from that comprise the $1,343,689.07.

12         And then what I asked the client to do was to

13   compile the additional fees that have incurred since

14   Judge Motley's decisions -- his decision, but they were

15   not otherwise included in Judge Motley's decision but,

16   you know, but reserved for further consideration by the

17   appropriate tribunal.  And that number, although it's

18   not -- it's clearly not current, for example my fees

19   are only through February 2016, it doesn't include

20   April, May, and certainly June, but the total number is

21   down in the right-hand corner, which is $231,530,000 --

22   $231,530.67  One more time for the record, $231,530.67.

23         So what I did then, in terms of trying to

24   understand the way for -- then -- this is argument, not

25   evidence, I don't think, is try to understand where we

1   are in terms of a realistic picture of equity based

2   upon the Debtor's own testimony, and the listing

3   agreement entered into with the Georgetown broker, and

4   I took the Capital One debt of 830,000, and I took the

5   top number from the BWF spreadsheet, which is the 1.3

6   million and change, and excluded for now, fees that

7   have not been allowed, and that comes to 2.173 -- a

8   million -- $2,173,689.

9        And then I computed a 6 percent commission for

10  disposition of property because that was the testimony

11  at the 341 meeting, that the -- that there was a 6

12  percent commission, and that's $150,000 on a $2.5

13  million sale, and that gets you to 2. -- $2,323,689.

14  That puts you right up against the number that was

15  listed in the bankruptcy schedules for value.  The

16  $2.352 million number puts you right up against it by

17  $53,000.

18        If you include the legal fees that were

19  accrued through February, there may be others for other

20  firms, I'm going to queue in 31,000, puts you over the

21  $2.5 million mark.

22        I'm not here to argue the allowance of

23  additional fee applications, and I'm not here to put on

24  evidence, I'm here to explain to the Court that if

25  there was a sense in Your Honor's mind, at the first

1    lift stay hearing, that there is a, you know,

2    substantial equity in this property, it seems to be

3    belied by the facts, as they continue to be developed

4    in this case, and under the terms of the loan

5    documentation, the fees that are incurred fighting with

6    the Debtor in this Chapter 11 case continue to accrue

7    and, you know, will continue to be tacked onto the

8    debt, and it comes as a surprise to no one, and -- but

9    it does, at some point, raise issues of equity, for

10   purposes of lift stay, for purposes of adequate

11   protection, and whether we've got a -- an insolvent

12   bankruptcy estate and lots of other, you know, familiar

13   Chapter 11 issues.

14        Now I want to turn to the second issue, which

15   is really related to the third issue, which is, you

16   know, what is this case really -- "What is this Chapter

17   11 case really about?", and I've already read to Your

18   Honor, the passages that were based upon the

19   representations of Mr. Johnson at the first day hearing

20   -- the first lift stay hearing.

21        Let me, if I may, Your Honor, turn to the 340

22   -- back to Tab 4, to the 341 meeting, and then turn

23   Your Honor's attention to page 16.  Again, I'm -- all

24   of my reading is from highlighted passages from the 341

25   meeting, both in your copy and Mr. Johnson's.

1          And you can see Mr. Jones from the U.S.

2     Trustee's Office is asking Ms. Ralls, here on page 16,

3     about her retirement plan.  He says -- Mr. Jones says:

4          "And there is not a retirement plan or

5          anything like that, that your company has, a

6          401(k) plan or anything like that?"

7          Ms. Ralls responds:

8          "My home.  My home is my retirement plan.

9          MR. JONES: Oh, okay.  What do you mean by

10    that?"

11         Ms. Ralls responds:

12         "Well, I mean I bought the home and I've been

13         paying for it for 20 years, so my home has

14         been my retirement and, you know, that's where

15         I put all of my money and energy into, is into

16         my home."

17         And Mr. Jones responds:

18         "Okay.  By that, do you mean that at some

19         point you hope to sell the home and use the

20         proceeds to sort of live off of, being your

21         retirement?"

22         And Ms. Ralls responds:

23         "Yeah, when I get old.  I mean 54.  I mean 54.

24         I've got a lot of years to work."

25         I'm sure the transcriber got the language

1    right there, but I think Your Honor gets the point.

2           And then if you turn to page 38, please, Your

3    Honor, it's further questioning from Mr. Jones of the

4    U.S. Trustee's Office.

5           Ms. Ralls responds to a question from Mr.

6    Jones indicating, in the part that I've highlighted:

7           "I will also talk to a real estate agent,

8           which would be my last resort."

9           And then Mr. Jones, and I highlighted:

10          "You are willing to sell the home, but it is

11          your last resort?

12          MS. RALLS: It would be definitely not what I

13          want to do.  It is my home, so I would prefer

14          to be given an opportunity to pay off the

15          debt.

16          MR. JONES: Do you know how much income you

17          would have to have in order to make a Chapter

18          11 plan with periodic payments or --

19          MS. RALLS: Yeah.  Probably -- I would say

20          probably close to, you know, $35,000 a month.

21          MR. JONES: Okay.

22          MR. POTTER:"  I said:

23          "I didn't hear the witness' answer."

24          And Ms. Ralls states:

25          "Close to $35,000 a month because my overhead

1          and mortgage, including the IRS, is 10,000,

2          and so the other $25,000 would need to go to

3          BWF, if they would be willing to."

4      And then if you turn to page 40, Your Honor,

5  please, there is further colloquy through Mr. --

6  questioning and answering between Mr. Jones and Ms.

7  Ralls, and the highlighted passage:

8          "Are you going to hire a real estate agent to

9          market the property in the meantime?"

10         Ms. Ralls says she has, yes.

11         "I have a -- I had somebody who I've done a

12         contract with, but no, I would prefer her not

13         to market it.  Do you know what it's like

14         having to go walk in your backyard and look in

15         your window when you're sitting there at the

16         table, because of the public filing that they

17         make?"

18     And then dropping down to the next highlighted

19  question from Mr. Jones:

20         "Okay.  So your plan right now is to see how

21         much income level you are able to get over the

22         next 3 to 6 months, and look at selling it and

23         listing it after that point; is that accurate?

24         MS. RALLS: Well, I mean, I guess we'll take it

25         day-by-day."

1         And then on page 53, Your Honor, I've

2    highlighted Ms. Ralls testifying in response to my

3    question.

4         Question says:

5         "I don't know that I have any intentions,

6         except in my heart, to stay in my home, okay?"

7         THE COURT:  That was page 43.  You said --

8         MR. POTTER:  Page 43.

9         THE COURT:  Yes.  You said "53" by accident.

10        MR. POTTER:  Page 43, line 17.

11        THE COURT:  Right, but you said "page 53."

12        MR. POTTER:  Oh, pardon me.

13        THE COURT:  When I asked it, Mr. Potter.

14        MR. POTTER:  Pardon me.  I -- For the record,

15   43.

16        And then continuing on the next page, I asked:

17        "So you have a listing agreement with someone?

18        MS. RALLS:  Yes, I do."

19        I ask:

20        "Who is the listing agreement with?"

21        And Ms. Ralls answers -- answered:

22        "Bubes."

23        Next page, I ask:

24        "When was the contract entered -- the listing

25        agreement entered into?"

1          And Ms. Ralls responds that it was entered

2     into that day; that is, June 8th.

3          And then continuing to page 47, I think I've

4     already covered this, where she said it was a listing

5     agreement which lists for $2.5 million.

6          So, Your Honor, I think back, from our

7     perspective there's a bit of a disconnect between what

8     Your Honor heard and/or ruled at the first day,

9     relative to the purpose of this Chapter 11, which I

10    clearly understood, and I think Your Honor's decision

11    -- decisions, you have a bench decision and a written

12    decision, reflect Your Honor's understanding,

13    (unintelligible) at least, that the Debtor's intention

14    was to file a Chapter 11 in order to do a prompt 363

15    sale of the property in order to maximize value,

16    hopefully yield equity for her which, at the time, I

17    think we all were under the impression that

18    (unintelligible) could be substantial, and I think

19    where we are now is that I think it's suspect that that

20    -- whether there's any equity in the property, and

21    certainly, you know, legitimate to examine and question

22    whether there is any equity in the property, and I

23    think the Debtor's testimony when -- with her intent to

24    sell the property anytime soon is pretty self-evident.

25         And so I think the question then becomes,

1  "Aside from the delay that necessarily comes from all

2  Chapter 11 filings, and the insertion of automatic

3  stay, you know, what is the purpose of this case, if

4  that, Your Honor?"

5          I'll draw your attention to Tab 6.  So I think

6  this is the preview of what Your Honor's going to see,

7  aside from the delay.  I've -- This is an email from

8  Mr. Johnson to myself, Monday -- It was Monday or

9  Tuesday of this week, earlier this week.

10         Mr. Johnson says:

11         "A review of the loan file and documentation

12         reveals errors that may allow the Bankruptcy

13         Court to alter or amend judgment under

14         F.R.C.P. 59."

15         Then continues the highlighted language:

16         "This was a superior court action that did not

17         address the core 'consumer protection' issues

18         yet.  Substantially high attorney's fees were

19         entered unchallenged?"

20         And then he goes on to suggest that he may be

21  taking a -- seeking to take a 2004 Examination of my

22  client, relative to what I would characterize as

23  nothing short of a collateral -- an effort to

24  collaterally attack a judgment that is still open in

25  the sense that the case is still open, it's before the

1   D.C. Court of Appeals, but nothing short of a threat

2   that the Debtor is going to ask Your Honor to somehow,

3   I don't know, take out of the hands of the D.C. Court

4   of Appeals or the Superior Court itself, the ability to

5   review or entertain arguments that were or were not

6   made to the Superior Court.  Obviously, the briefing

7   before the Court of Appeals has not occurred yet.

8          And other than to refer Your Honor to Your

9   Honor's decision, I think in February of this year, in

10  the First American case, First American Title case,

11  where there was an effort by a party to collaterally

12  attack a superior court judgment, where Your Honor

13  flatly rejected it on the grounds of collateral

14  estoppel; Rooker-Feldman, I believe, and the like, I

15  guess we'll wait to see if the Debtor, in fact, comes

16  forward with, I would gather, a Complaint.  I don't

17  (inaudible) file a motion for reconsideration motion of

18  some other judge's decision, in front of Your Honor

19  (inaudible).

20         But I think this is telling, this coupled with

21  the real life story on equity, value, debt, equity and

22  the real intention -- the real intentions to sell.  I

23  think this tells a story of what this Chapter 11 is

24  about, and then -- and where it's headed, which is, I

25  think, a good segue into the motion that is pending

1  before Your Honor for this afternoon, which is a motion

2  to modify the automatic stay to permit the appeal

3  that's pending before the D.C. Court of Appeals, that

4  appeals Judge Motley's decisions, to proceed.

5         I think the papers that were submitted -- Does

6  Your Honor have questions on the first points that I've

7  made on sort of the (unintelligible)?

8         THE COURT:  No.

9         MR. POTTER:  The papers, I think, actually

10  adequately address the arguments, but I want to sort of

11  highlight a few things, some of which are going to come

12  back, I think, to Your Honor, and they're sort of

13  interesting issues for people who practice Chapter 11

14  -- business -- as Your Honor knows, I do it 99.9

15  percent in the business context, not in the individual

16  context, but this issue of exemptions, what's exempt,

17  what's not exempt, Your Honor has already made a ruling

18  which I think is law of the case, about what -- what is

19  in the estate, and (unintelligible), and the parties

20  litigated.  I think it's been fully litigated, and the

21  estate is vested with some asset in this case.

22         Unlike the prior Chapter 13/7 of the Debtor,

23  there is an estate here that does have valuable assets,

24  and -- it has a valuable asset.

25         Let's talk about the appeal.  It's an appeal

1    by the Debtor of a $1.3 million, and accruing and

2    growing, judgment, finding that the indebtedness is

3    secured by her home, and authorizing my client to go

4    forward with a foreclosure sale.

5         THE COURT:  There's a co-appellant in the

6    Ralls Collection, Incorporated.

7         Is that entity in bankruptcy?

8         MR. POTTER:  It's a fascinating -- The answer

9    is it is in bankruptcy.  Your Honor granted consensual

10   lift stay with Mr. -- Wendell Webster is the Trustee,

11   and so there's no stay of the litigation.  You know,

12   the only reason there's a stay here is because of the

13   subsequent filing because there was a lift stay granted

14   in the Chapter 7, it was just the refiling that creates

15   the -- this issue that we're here before Your Honor on,

16   in connection with stay of the appeal.

17        Absent the new filing, the -- Actually, her

18   case was -- the Debtor's case was ended and closed

19   which, in and of itself, would have made the stay go

20   away, but she got her discharge.  That makes the stay

21   go away, and there was a lift stay order that was

22   consented to, that allowed the Superior Court to go

23   forward -- the Superior Court litigation go forward to

24   entry of judgment.

25        There's an interesting question in my mind,

1    Your Honor, about the Debtor's ability to prosecute the

2    appeal on behalf of -- I don't want to get too far

3    afield here, but Mr. Webster obviously, who's the

4    Trustee, controls, from a business perspective, Ralls

5    Collection.  He makes the decisions (unintelligible) as

6    a matter of law he should be able to make all the

7    decisions relative to Ralls Collection, whether to

8    prosecute in the Superior Court, prosecute in this --

9    in the D.C. Court of Appeals, settle, do anything he

10   wants to as the Trustee, subject to business judgment

11   and Your Honor's review.

12         It's unclear to me how, and if you look at the

13   docket in that case you will not find anything whereby

14   Mr. Webster gave any authority to the Debtor in this

15   case, to do anything on behalf of Ralls Collection,

16   Inc.

17         So there's a real question in my mind, of

18   authority of someone other than Mr. Webster to be

19   prosecuting the appeal on behalf of Ralls Collection,

20   Inc., but from an automatic stay standpoint, the stay

21   was lifted in that case, continued to be lifted in that

22   case, and that's not even -- that is not an impediment

23   to the appeal going forward.

24         If -- Let me turn back to the direction I was

25   headed with this Debtor, Ms. Ralls.

1          If she -- And let me say -- Let me jump to the

2     punch line.  This is net (phonetic) neutrality.

3          I think the appeal is the -- relevant to

4     bankruptcy estate of the Chapter 11.  At the end of the

5     day, I'm not sure any of this matters because as I read

6     the Debtor's papers, it just -- there is no stay and

7     (unintelligible).  Having appeal before would be in the

8     best interest of the estate.  That's what it says in

9     the papers.

10          So there's a little bit of academia going on

11     here, I think, in terms of how do we get to the

12     conclusion, which I think is that Your Honor grants

13     lift stay relief, let the appeal go forward, but I want

14     to make sure we do it right because I know Your Honor

15     appreciates it.

16          And if the Debtor -- Remember the -- their

17     home is the subject of a complete homestead exemption,

18     Your Honor ruled that, but for the fact, in this case,

19     she's voluntarily contributed some portion of it to the

20     bankruptcy estate.

21          Now, I think at the first day hearing, to be

22     candid and intellectually honest, we were -- I think

23     Your Honor's ruling says that it's the equity piece of

24     it that's not put in the bankruptcy estate

25     (unintelligible) the bankruptcy schedules are actually

1   redone slightly differently, that the Capital One piece

2   is property of -- the portion of the property, the real

3   property, that's subject of Capital One lease has been

4   contributed to the bankruptcy estate, but because of

5   the dispute over my client's lien, that portion has not

6   been contributed to the bankruptcy estate.  I'm not

7   sure that matters for purposes of today, or maybe ever,

8   but if the Debtor is successful, this is my neutrality

9   point, if the Debtor is successful in the appeal, it

10  doesn't benefit the bankruptcy estate one iota.

11       Why?  Because all she's doing, all the Debtor

12  is doing would be taking whatever equity may or may not

13  exist today, which is subject to an exemption, it's

14  outside of the bankruptcy estate, and commensurately

15  increasing it dollar for dollar.  For every dollar she

16  knocks off our judgment, that's an increase in her

17  equity, which is an increase in her exemption, which

18  Your Honor has ruled is outside the estate.

19       So while the Debtor, in the Debtor's papers,

20  says, "Let an appeal go forward, it's in the best

21  interest of the estate," other than from the sort of

22  loosy-goosy standpoint of clarity, which is what we all

23  would like to get to the -- when we get to the end of

24  this process, I'm not sure, which everybody (phonetic)

25  can even quantify from a monetary standpoint, and then

1   have the creditors.

2          There are three creditors.  She reaffirmed it

3   many, many, many times during the 341 meeting.  The IRS

4   has filed a Proof of Claim now, for $25,000; Capital

5   One, $830,000; and my client.  That's it.

6          So, you get reversal of Judge Motley, it

7   doesn't benefit the estate one iota.

8          Conversely, subject to one caveat, affirmance

9   of Judge Motley, I don't think, affects the estate one

10  iota, and my own -- my one caveat is if we open up the

11  door to the box, the box for the estate, which is now

12  vested with $830,000 of value, and upon affirmance with

13  the rest of the property that's subject to our lien in

14  the estate, then there's a theoretical benefit to the

15  -- monetary benefit to the estate.

16         This issue is going to come up again.  Why?

17  Because the Debtor filed, pro se, a document with the

18  D.C. Court of Appeals within the last couple of days,

19  saying effectively, (unintelligible) see it.

20         I can't -- Mr. Aronson, who was her former

21  counsel, with the consent of the Debtor, back on, I

22  think, April 26th, sought to be removed as counsel in

23  the case, and the Court granted the -- the D.C. Court

24  of Appeals granted that request, and set some deadlines

25  by which the Debtor was to obtain replacement counsel,

1   and Ralls Collection as well, and that deadline has

2   come and gone, and there was an original motion filed

3   by the Debtor seeking an extension, and the email

4   colloquy with Don (phonetic) Gould and the Debtor is --

5   I don't have -- I'm not her counsel in that case, I'm

6   not counsel in that case, but I'm -- indicated that

7   replacement counsel would be obtained by the 14th or by

8   the 20th of June is when Ms. Ralls sent them emails,

9   which I have with me, and that obviously, unless it's

10  happened sometime since she filed the most -- the

11  second motion for an extension of time, the -- let --

12          The other thing I want to point out to Your

13  Honor, and I will hand it up, I told myself getting

14  into court, I'm going to be inclined to hand up things,

15  if I may.  One moment.

16      (Pause.)

17      MR. POTTER:  Because I think this is kind of

18  telling.  If I may, Your Honor?

19      THE COURT:  (No audible response.)

20      MR. POTTER:  So what you're looking at here is

21  a motion -- a further extension to retain counsel,

22  filed by Ms. Ralls, and it's a pretty quick read, and

23  it's got some attachments to it which are kind of

24  interesting, which I'll point out, but I think the real

25  key language here, that I would like Your Honor to

1    focus on, is that she says:

2         "I am in Chapter 11 for Marsha Ralls

3         (personally), and I am the only shareholder of

4         the Ralls Collection, Inc.  All attorneys I

5         retain must first go through Judge Teel and

6         the Bankruptcy Court."

7        And, Your Honor, I submit that this is really

8    rip sawing the two courts.  To go to another tribunal

9    and tell this other tribunal that an impediment to

10    meeting with and hiring a lawyer to put in an

11    appearance in another case is you -- in a Chapter 11

12    proceeding, is -- it's just misleading.  It's just

13    wrong.

14        The Debtor has the absolute right to go out

15    and interview law firms, lawyers to represent her in

16    this appeal, and to retain them.  Chapter 11 debtors

17    retain counsel and other professionals all the time in

18    Chapter 11s across the United States, and then, and

19    then they sign retention, and then you fill out an

20    application to employ, and you fill out a verified

21    statement and you follow the procedures, if they even

22    apply.

23        It's not clear to me, from a bankruptcy

24    perspective, why the Debtor would need to get Your

25    Honor's approval to retain counsel in this proceeding.

1   There are no estate assets that could be used to pay, I

2   guess special, you know, it would be special counsel

3   (phonetic).  I don't know how they're going to get

4   paid.  If I get paid -- They're not getting paid from

5   the bankruptcy estate, right?  The property is fully

6   encumbered, probably over-encumbered, and we're not

7   going to consent to use of our collateral.  I don't

8   think Capital One's going to consent to use of the

9   collateral to pay a lawyer to go into court and try to

10  get our judgment reversed.  That's -- I mean, that's

11  not going to happen, and I -- So, I mean -- and it's

12  all to preserve and enhance an exemption that's outside

13  of the bankruptcy estate.

14        So you're going to have to come up -- identify

15  a lawyer, come up with a way, outside of the estate, to

16  pay that lawyer to take on an action to undo that which

17  benefits a creditor, which happens all the time.  I

18  mean that's -- that, in and of itself, isn't

19  necessarily a bad thing, but usually special counsel

20  trying to do something -- he's trying to do something

21  to benefit the bankruptcy estate, and here that special

22  counsel wouldn't be doing anything to benefit the

23  bankruptcy estate, it would be solely to benefit the

24  Debtor, because I've already gone over it, every dime

25  of reversal doesn't -- none of it enures to the

1   bankruptcy estate, it enures purely to the exemption of

2   the Debtor.

3          So you're in this very intellectually

4   interesting world that we don't encounter in business

5   cases, because of the lack of exemptions.

6          The issue of time lines, time frames for the

7   parties and the -- in the D.C. Court of Appeals

8   litigation, time frames, time lines, extensions of

9   deadlines, other than to the extent that the automatic

10  stay applies, should be left at that court and the

11  parties before that court.  The timing of filing of

12  briefs, which has now come and gone, subject to the

13  Bankruptcy Code, should be left at that court, and the

14  parties before that court.

15         And in this case, again, the Debtor, in her

16  opposition, said, "The automatic stay doesn't apply."

17  We've cited -- The cases that were cited are not on

18  point.  We cited the cases that are on point, where you

19  sue a debtor outside -- before a bankruptcy case.  If

20  you prevail, case goes up on appeal.  Every court of

21  appeals in the nation, that's addressed the issues,

22  says this -- "The appeal is stayed."

23         Honestly, I was perplexed by the -- by those

24  holdings because it struck me as the Debtor has this

25  ability to file her appellate brief.  Well, you know,

1   why would the automatic stay prevent her from doing it?

2   I don't think it does prevent her from doing it, but

3   the case is otherwise stayed, according to all of these

4   authorities, which I had actually never researched

5   before, and my friends at Brown & Gould taught me a

6   lesson on this particular point, but I think the law is

7   unequivocally clear that the automatic stay applies.

8       And so the question is, you know, "Is there

9   cause for modifying the stay relative to the estate

10  where this case is going?  The creditors?  What's in

11  the best interest of the estate?  What's in the best

12  interest of the creditors?  What's in the best interest

13  of the Debtor?"  The Debtor herself says, "It's in my

14  best interest."  She testified at the 341, "It's in my

15  best interest to get this appeal done so I can get it

16  reversed and put you bad guys back in the place where

17  you belong."  That's fine.  Let's go.  Let's get this

18  appeal resolved.

19      From a bankruptcy perspective, I don't think

20  it's a close call.  I think the stay should be modified

21  in order to let the appeal go forward.  This is not to

22  foreclose, to either get affirmance, get reversal, or

23  get whatever else we can get from a Court of Appeals,

24  other than affirmance and reversal, maybe a remand or

25  some kind of (unintelligible), I don't know, but it's

1    in everyone's interest to get that done sooner rather

2    than later, and not let this Chapter 11 case be an

3    impediment to it.

4          Last point I want to make before I sit down or

5    answer any questions, Your Honor, is that Section

6    108(c), I think, gives some relief to the Debtor, and I

7    think it is because the briefing schedule, I think,

8    came out before the -- I'm not sure whether it matters

9    whether it came out before or after the bankruptcy

10   filing.  So while the briefing deadline for the Debtor

11   has come and gone on paper, I think Section 108(c)

12   actually, because of the automatic stay in the case, I

13   think Section 108(c) gives the Debtor 30 days from

14   entry of the lift stay order, to comply with these

15   other things that have to be done in the collateral

16   litigation.

17         So I think from a bankruptcy perspective she's

18   going to enjoy -- and the Court there can give her more

19   time if the Court is inclined to do so, but I think at

20   a minimum she's going to have another 30 days from

21   entry of a lift stay order --

22         THE COURT:  So if I lift the stay today, and

23   30 days hence is June -- July the 24th, you don't have

24   any objection to the order lifting the stay saying the

25   stay is lifted, but pursuant to 108(c)(2), the Debtor's

1    time within which to file a brief in the Superior Court

2    is fixed as July 24, 2016?

3          MR. POTTER:  Yeah.  I think it would be

4    extended.  Exactly, Your Honor.

5          So I think she can have that additional time

6    to qualify her lawyer and get a brief out.

7          And the record is what it is, right?  The

8    decision came down a long time ago.

9          In fact, Mr. Aronson, who's -- who I thank so

10   much, I -- and I don't think we're going to need his

11   testimony today, but there's no question he's been out

12   for some period of time, I think it became formalized

13   in April.  There's been plenty of time to find

14   replacement counsel and, you know, at some point you

15   got to say, you know, "Enough is enough.  Time to go

16   out and hire a lawyer."  City's filled with lawyers.

17   City's filled with good lawyers and, you know, there's

18   no bankruptcy reasons for not modifying the stay and

19   putting this back into the court, like the basketball

20   court, into the court of the D.C. Court of Appeals for

21   purposes of dealing with the administration of the time

22   lines for retaining counsel and filing briefs in that

23   case.

24          Thank you, Judge.

25          THE COURT:  Thank you.

1          Mr. Johnson?

2          MR. JOHNSON:  Thank you, Your Honor.  If it

3     pleases the Court, I sit and listened to counsel as he

4     went through a very long factual background that I

5     don't find necessarily relevant to the motion, but

6     certain things that were said, I think, --

7          THE COURT:  (Unintelligible) the well

8     (unintelligible).

9          MR. JOHNSON:  Your Honor, I -- when I first

10    read counsel's motion, I thought initially to just join

11    in because essentially the Debtor wants to pursue the

12    appeal in the D.C. Superior Court.  However, I thought

13    that the issues that were presented required some

14    digging into, that we probably would have to oppose it

15    just based on what I believe how the law should read

16    with regard to what's happening in this particular

17    jurisdiction.

18         One of the key issues that caused me concern,

19    or trouble, is that when you read rule -- Federal

20    Bankruptcy Rule of Procedure 6009, it kind of opens the

21    door and gives a lot of authority to the Debtor, in

22    this instance the Debtor-in-Possession, which is a

23    Chapter 11 Debtor, and in reading it and reading some

24    of the authority that was cited by counsel in counsel's

25    reply, it seemed as if the other jurisdictions have

1   felt as so long as the action was commenced against a

2   debtor, that the debtor would essentially be violating

3   the automatic stay if she continued the action after

4   filing the petition, but the facts of the instant

5   matter is such that not only was she a defendant, she

6   was also a counterclaimant.  I think that sort of

7   changes the position that the Court should take with

8   regard to her pursuit.

9        So our position was the automatic stay does

10  not apply to her since she's pursuing the appeal based

11  on issues that she thought should have been raised in

12  the counterclaim, or was raised in the counterclaim,

13  and the Court, according to her, had erred.

14       So we oppose the motion based on -- I guess

15  that would be somewhat of a, I guess an academic type

16  of argument to make with regard to how 6009 applies to

17  Section 362, and given the fact that she is pursuing it

18  as the appellant, given the counterclaims, I don't

19  think the automatic stay should apply.

20       Now, researching some of the cases that were

21  in this jurisdiction, I didn't find anything directly

22  on point, but there was something, I think it was In

23  re: Bailey, and I actually didn't bring that case with

24  me, in which this Court -- it seemed to me that this

25  Court was walking down the same line as to the Debtor's

1   ability to pursue actions postpetition.

2         THE COURT:  Yeah, but what you're saying is

3   you've got a brief due, that is both for her as an

4   appellant on her claim against BWF, by way of being a

5   counterclaimant, and she's willing to have or being

6   (phonetic) an appellant as to the ruling against her on

7   the claim held by BWF, which presents the problem that

8   if 108(c)(2) applies, as Mr. Potter thinks it does, to

9   give her additional time to file her brief as an

10  appellant from -- in the civil action against her, that

11  might not apply to the role she plays as being an

12  appellant from her counterclaim against BWF.

13        And I'll ask Mr. Potter, do you take a

14  position that if the brief for her as an appellant from

15  the adverse judgment against her is -- on the claims

16  asserted by BWF, is extended by statute, to July the

17  24th, 2016, BWF is agreeable to her having until July

18  the 24th to include, as part of her brief, the portions

19  dealing with the appeal regarding her counterclaim?

20        MR. POTTER:  Well, before I answer your

21  question, if I may, Your Honor, I actually thought

22  about this issue and asked Brown & Gould, when we saw

23  the opposing papers, what portion of the appeal, and

24  these are -- the person in the courtroom that knows the

25  answer to this question better than any of us is

1   sitting at counsel's table, okay, save perhaps the

2   Debtor, and I asked the question, "What portion of the

3   appeal is allocable, if you will, to the claim of our

4   client against the Debtor, and what portion of the

5   appeal is allocable to claims that the Debtor raised

6   against BWF?"

7        And I don't have the email with me, and it was

8   with Mr. Brown, Ms. O'Brien's colleague, but the

9   response that I got back is by actually -- made the

10  same -- a similar comment in her notes, is that

11  actually little or nothing of the Debtor's claims back

12  against my client are actually the subject of the

13  appeal.  It's really the -- substantially, if not

14  entirely, an appeal of the claims brought by BWF

15  against the Debtor.

16       It's like an evidentiary hearing, nobody ever

17  gets comfortable or not comfortable with this

18  argument/representation.

19       Your Honor's asked a question which is whether

20  my client would consent to giving additional time for

21  briefing of claims.  Ms. O'Brien also indicates that

22  she believes that there's going to be an entirely new

23  -- once the lift stay order comes out, she believes

24  there's going to be an entirely new briefing schedule

25  that will probably make the question academic.

1          I have a client in this case, Your Honor, who is

2     frustrated, I think, with the 3-year litigation and

3     three different styles of bankruptcy filings by one

4     Debtor, and seven by the other obligor, and I am

5     reluctant to -- and waive, and not usually, to tell

6     Your Honor that my client would consent to them.

7     Moreover, I'm not counsel to my client in that case.

8          I would like to find a bankruptcy solution.  I

9     would prefer some kind of finding or ruling that 108

10    applies to all the claims, and from a bankruptcy

11    perspective, that the Debtor has the benefit of 108(c)

12    for all the claims.

13         And, Your Honor, the same question could be

14    asked, not of this Debtor, but of Ralls Collection,

15    which hasn't filed its appellate brief either.  The

16    deadline has, you know, has come and gone without Ralls

17    Collection, and there I'm certain I don't have

18    authority to agree to -- in a case where I'm not

19    counsel of record, to agree to consent to it.

20         So it's not me being difficult, it's me being

21    a careful and cautious lawyer, and also wanting to be

22    intellectually -- and being a --

23         THE COURT:  But the stay has been lifted in

24    Ralls Collection already, right?  There's been a --

25         MR. POTTER:  Correct.

1              THE COURT:  -- consent order?

2              MR. POTTER:  Correct.  Correct.

3              THE COURT:  But you're willing to have me say

4    that the deadline for the Debtor to file a brief in the

5    appeal is controlled by 108(c)(2), and therefore would

6    be 30 days after I entered the order and lifted the

7    stay?

8              MR. POTTER:  Yes, Your Honor.

9              THE COURT:  All right.

10             Mr. Johnson?

11             MR. JOHNSON:  Your Honor, another matter that

12   was brought up by counsel involved the employment of

13   professionals for Ms. Ralls, and it was also mentioned

14   by Trustee Jones during the 341, about employing

15   professionals to perform the -- or to handle the appeal

16   for him.  That -- I would expect it may be done in an

17   expedited manner, but it would still take additional

18   time also to reconsider, is the actual time table for

19   the Court of Appeals, in terms of their actual briefing

20   schedule.

21             I'm not party to what's happening at the

22   appellate level, but I do recognize that they too have

23   a schedule that would have to be considered so, you

24   know, 108(c) would give, I guess, the opportunity,

25   additional 30 days, to submit a brief, but would that

 1   not be imposing on the Court of Appeals with regard to

 2   their scheduling?  I'm not absolutely certain how that

 3   would work.

 4          THE COURT:  I would just be declaring under

 5   the Bankruptcy Code, what the consequence is of Section

 6   108(c)(2), and Mr. Potter is agreeable to that

 7   language.

 8          MR. JOHNSON:  Okay.

 9          And in terms of the Court's order with regard

10   to the handling of the appeal, it would be limited to

11   just the actions of the appeal?  I'm not certain what

12   else could be done outside of that, from the Court --

13   from the appellate court, but in my experience there

14   have been instances in which the Court has granted

15   relief of stay to do certain things at the D.C.

16   Superior Court, and other matters happen, and when we

17   come back to this court, to some degree you stated your

18   hands were tied, or you say something like you can't

19   unring the bell, and not address whatever happened in

20   D.C. Superior Court.

21          So I'm not certain of what exacting language

22   we could use to just limit it to the actions of

23   pursuing the appeal, but I think it would be beneficial

24   to do so.

25          THE COURT:  All right.

1          MR. POTTER:  Your Honor, if I may, at this

2     point I actually took the liberty of revising the

3     proposed order, literally on my way out the door.  I

4     apologize, it takes -- not the short order.

5          If I may hand a copy to counsel?  This may

6     help.  It's not -- It's intended to help.  This is a

7     redline against what was submitted to the Court.

8        (Pause.)

9          MR. POTTER:  So I say:

10          "The motion is granted as follows:

11          The automatic stay in this case is lifted and

12          modified to permit the appeal in," and then

13          identify the case specifically, "in any

14          litigation relating to the disputes raised

15          therein, whether in the D.C. Court of Appeals,

16          the D.C. Superior Court, or otherwise, to

17          proceed to conclusion.  The stay is not, by

18          this order, modified to permit BWF to

19          foreclose or exercise creditor's" rights and

20          remedies -- "rights/remedies."

21          It strikes me, Your Honor, that we don't need

22     to be --

23          THE COURT:  You used the word, "and remedies,"

24     right?  "Rights and remedies"?

25          MR. POTTER:  Yeah.  Yeah, I think so.

1          THE COURT:  It's all right.

2          MR. POTTER:  And I don't think we want to be

3     back before Your Honor to ask for further lift stay if,

4     for example, the Court of Appeals rules, and one party

5     needs to file a cert petition to the Supreme Court.  I

6     mean, we shouldn't have to come back before Your Honor,

7     it doesn't seem to me.  It doesn't seem to me that we

8     should have to come back before Your Honor if the Court

9     reverses and remands with instructions to do X, Y and

10    Z.

11         It's just the -- It's just civil litigation,

12    that's all it is, and so long as the parties aren't

13    actually exercising their rights, so long as the

14    automatic stay remains in place, I don't think that

15    there's much opportunity for mischief, and I just don't

16    see the benefit in saying we have to come back before

17    Your Honor in order to pursue remedies up and down the

18    appellate and trial court hierarchy.

19         Moreover, the automatic stay is otherwise in

20    place, and if somebody's got a concern that a Court is

21    going off the reservation for purposes of this order,

22    Your Honor is here, and the motion, you know, an

23    appropriate motion could be filed, but I -- this is

24    language that I would propose in addition to whatever

25    Your Honor wants to, you know, mediate relative to the

108(c) issue.

I agree with Your Honor that if the D.C. Court of Appeals wants to give the appellants, you know, unlimited time to retain counsel, and unlimited time or multiple extensions of appeal, brief deadlines, that's -- like I said in my opening remarks, that's really between the Court and the parties to that case.

Thank you, Judge.

THE COURT:  Mr. Johnson, do you want to look at that order with your client for a moment?

(Pause.)

THE COURT:  That's -- I'll take a very short recess in case the parties want to discuss this, and they don't have a back and forth with me having to act like a tennis referee.

(Recess at 3:10 p.m., until 3:25 p.m.)

AFTER RECESS

THE COURT:  (Unintelligible) report, Mr. Johnson?  You and Mr. Potter, either one?

MR. JOHNSON:  I'm sorry, what did you say?

THE COURT:  Either one of you can report to me what you -- if anything, you agreed upon.

MR. JOHNSON:  Yes, Your Honor.

The order -- We agree upon the wording of the order with regard to, I think -- with the exception to,

1    I think, there was one area that might need to be

2    corrected, (unintelligible) 1.0 (phonetic).

3            THE COURT:  (Unintelligible.)

4            MR. JOHNSON:  Yes.

5            THE COURT:  (Unintelligible) had knowledge to

6    the effect that pursuant to 11 U.S.C., Section

7    108(c)(2), the time for the Debtor to file a brief in

8    the Court of Appeals is fixed -- is not occurring prior

9    to 30 days after entry of this order, to July the 24th,

10   2016, so you can send it today.

11           MR. JOHNSON:  Thank you.

12           MR. POTTER:  Thank you.

13           THE COURT:  Is there anything else?

14           MR. POTTER:  There is.  It's a little more --

15   just more of a (unintelligible) is going to

16   characterize (unintelligible).  I don't want to get my

17   backside kicked by my client, but I'm mentioning this.

18           We wrote up a contract to purchase the

19   property for the $2.5 million number that, you know, I

20   dragged Your Honor through, non-contingent -- no

21   financing contingency cash, and tendered that to

22   Debtor's counsel earlier this week, and I just want to

23   make that part of the record.

24           Thank you, Judge.

25           THE COURT:  All right.  Thank you.

1          I'm not sure I agree with your position

2     regarding the effect of her having claimed an exemption

3     of whatever equity that exists, even after she

4     eliminates your client's claim, but at the same time,

5     he's got a judgment that is a binding judgment that

6     hasn't been stayed, and if the numbers play out, the

7     Debtor is playing a very dangerous game if she doesn't

8     move forward with a plan to dispose of the property.

9          I don't see any other alternative than for her

10    to proceed to dispose of the property, if I was to give

11    full faith and credit to the judgment of the Superior

12    Court, so it may be that she gains nothing by such a

13    plan, if the property is only worth 2.5 million and the

14    claims exceed that, but I have a hard time dealing with

15    a judgment that's not been stayed and is entitled to

16    full faith and credit, and the Debtor's not taking

17    steps to liquidate the property.

18         If she thinks there's going to be equity after

19    she defeats the claim in the Superior Court, obviously

20    the proceeds of the sale would be held in escrow --

21    could be held in escrow pending the outcome of the

22    Superior Court and the Court of Appeals litigation, but

23    that's not before me today.  I don't think the Debtor

24    was going to try to sell the property.  That may be in

25    her best interests, if she's able to defeat the claim

1    (unintelligible) having the creditor entitled to rely

2    upon the full faith and credit clause of the

3    Constitution, which requires me to give full faith and

4    credit to the judgment of the Superior Court, but

5    (unintelligible) await any further hearing when

6    somebody files a motion that requires me to look at the

7    issue.

8              All right.  Thank you, Counsel.

9              MR. POTTER:  Your Honor, I -- you said

10   something and I just didn't quite -- you disagree with

11   me about something, which the -- which has happened

12   many times before, over the years.  I didn't --

13             THE COURT:  She's still entitled to do a plan

14   to sell the property.

15             MR. POTTER:  Oh, entitled to do it, to file a

16   Chapter 11 plan?

17             THE COURT:  To sell the property and to --

18   and, in fact, -- and even if your client has been

19   eliminated, she'd be -- still be entitled, or

20   theoretically (unintelligible) might be eliminated,

21   she'd still be entitled to a new Chapter 11 plan in

22   order to address her final true (phonetic) affairs.

23             MR. POTTER:  I -- Your Honor, you and I are

24   not in disagreement on that.  I do agree the Debtor

25   could file a plan.  I believe that if exclusivity were

1    terminated, we could file a plan.  If a Chapter 11

2    trustee was appointed, I absolutely think a plan could

3    be filed.  I think a plan should be filed.  It should

4    be filed sooner rather than later.

5        I've invited Mr. Johnson to sit down on

6    several occasions to discuss what, you know, what would

7    be the ingredients of a consensual plan.

8        I agree with Your Honor, a plan could be

9    filed, certainly.

10       THE COURT:  All right.  Thank you, Counsel.

11     (Proceedings concluded at 3:31 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceedings
in the above-entitled matter.


/s/_____          July 5, 2016
STEPHEN C. BOWLES