IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE: | * | |
|    Marsha Ann Ralls, | * | Case No. 16-00222 SMT |
|       Debtor. | * | (Chapter 11) |
| _____ | * | |

**OPPOSITION TO MOTION FOR AN ORDER (I) AUTHORIZING BWF TO IMMEDIATELY FILE A CHAPTER 11 PLAN AND (II) TERMINATING EXCLUSIVITY AND DENYING ANY REQUEST TO EXTEND THE INITIAL 120-DAY EXCLUSIVE PERIOD**

**COMES NOW**, the Debtor Marsha Ann Ralls, by and through undersigned counsel, hereby opposes the Motion for an Order (I) Authorizing BWF to immediately file a Chapter 11 Plan and (II) Terminating Exclusivity and Denying any Request to Extend the Initial 120-Day Exclusive Period. This Motion has been filed by the BWF without the authorization of any code provision in the Bankruptcy Code. The arguments posed by the movant are without merit and the multitude of "Motions for Relief" only seek to harass the debtor and wrongfully burden the estate by increasing the claims of the creditor BWF. In opposition to the instant motion, the debtor responds as follows:

## GENERAL OBJECTIONS

Respondent generally objects to movant's paragraphs to the extent they do not comport with the stated position of the Respondent. Unless expressly affirmed by the Respondent, the paragraphs are deemed "opposed" and "rejected."

### Background

### The Property

1. The debtor does not deny the movant's paragraph 1. The property is her family home for almost twenty (20) years.

   **The First Secured Debt: Capital One ($830,000 Secured Claim)**

2. The debtor does not deny the movant's paragraph 2.

3. The debtor does not deny the movant's paragraph 3.

4. The debtor does not deny the movant's paragraph 4. The debtor is seeking a mortgage modification with Capital One.

**The Second Secured Debt: BWF ($1.6 Million Secured Claim)**

5. The debtor does not deny the movant's paragraph 5. The debtor argues that she received a disguised consumer loan from the movant.  The loan was made to the Ralls Collection, Inc.  The debtor was the guarantor on the loan and was required to use her personal residence as collateral. The debtor received $391,000.00 cash from the movant and the remaining balance was placed in an interest reserve to service the loan for one (1) year.

6. The debtor does not deny the movant's paragraph 6.  The debtor maintains she personally signed the loan documentation as guarantor but did seek a commercial loan.  The debtor maintains that the collection of the debt against her personal residence was wrongful and fraudulent. The debtor agrees it looks like her handwriting, as she signed the papers in 10 minutes with the settlement company coming straight from the doctor on multiple medications & has very little recollection of the meeting. She testified in court this same statement, but her attorney called none of the 3 doctors that saw her that week to testify on her behalf.

7. The debtor does not deny movant's paragraph 7.  The debtor received the loan in October.  He debtor did not actually see the loan documents until January 2012. The debtor maintains that she sought a $70,000.00 loan from the movant.  The movant would not make a loan unless it was loan for her business in the amount of $500,000.00. The debtor maintains that the collection of the debt against her personal residence was wrongful and fraudulent. The debtor maintains that a hearing was held whereby Judge Motley refrained from making a final determination of damages.  It is unclear to the debtor how an entry of damages were made without being contested.  The matter is currently subject to Appeal in the D.C. Superior Court of Appeals.

2

8. The debtor does not deny the movant's paragraph 8.

9. The debtor does not deny the movant's paragraph 9. The debtor maintains that the issue on Appeal seeks to address the District of Superior Court's error in not addressing the asserted Consumer Protection claims. The debtor's original claims were based on capacity.

10. The debtor does not deny the movant's paragraph 10.

11. The debtor does not deny the movant's paragraph 11. The debtor maintains that a hearing was held whereby Judge Motley refrained from making a final determination of damages. It is unclear to the debtor how an entry of damages was made without being contested. The matter is currently subject to Appeal in the D.C. Superior Court of Appeals. The debtor maintains that the collection of the debt against her personal residence was wrongful and fraudulent.

12. Debtor does not deny movant's paragraph 12.

13. Debtor does not deny movant's paragraph 13.

14. Debtor does not deny movant's paragraph 14.

15. Debtor is without complete information to admit or deny movant's paragraph 15

16. Debtor does not deny movant's paragraph 16. Debtor offered a payment plan on May 8, 2013. May 15, 2013 they filed to foreclosure. Debtor offered a payment plan again at the first mediation the summer of 2013 and instead was told by the BWF attorney that I had a lot of rich friends and I needed to go to them to pay off BWF. They wanted 850,000 at that meeting shortly after default. BWF received $23,057.80 from the Chapter 7 Trustee.

**BWF'S FIRST LIFT-STAY MOTION**

17. Debtor does not deny the movant's paragraph 17. The movant has been unaccepting of the Court's denial of its first motion of relief. The movant has consistently tried to make a collateral attack upon the Court's ruling.

## BWF'S SECOND LIFT-STAY MOTION

18. Debtor denies the movant's paragraph 18. The movant presented a legal issue that it did not understand "how" to address. When debtor's counsel made a recommendation as to the proper procedure, the movant ignored the request. While the end result favored the debtor, the movant lacked the procedural posture. Debtor's counsel has persistently demanded the movant "follow the rules." The failure of the movant to follow procedure has created unnecessary expense and duplicative efforts.

19. Debtor denies the movant's paragraph 19. BWF is not entitled to lift-stay relief "for cause" or any other reason articulated in the motion.

20. Debtor denies the movant's paragraph 20. The debtor executed a new listing agreement to sell the property. The debtor is waiting for the realtor to provide a verified statement to support the listing agreement. The debtor intends to file a Motion to Employ a Realtor.

## Efforts to Negotiate a Plan

21. The debtor does not deny the movant's paragraph 21.

22. The debtor denies the movant's paragraph 22. The debtor's counsel acknowledged receipt of the movant's communications.

23. The debtor does not deny the movant's paragraph 23.

24. The debtor does not deny the movant's paragraph 24.

25. The debtor denies the movant's paragraph 25. During the stated period, the movant made an offer to purchase the subject property for $2,500,000.00. The debtor denied the offer. The maximum value for the property has been expressed at $4.1 Million. The debtor suggested a counter-offer be made. No subsequent counter-offer has been made.

26. The debtor denies the movant's paragraph 26. To date, the movant has failed to increase the original offer above the original $2,500,000.00. The movant's counsel continues to misrepresent the status of the case.

27. The debtor denies the movant's paragraph 27.

28.  The debtor denies the movant's paragraph 28.  Ultimately, the movant's purpose is to burden the debtor's estate with unnecessary motions.  The consistent barrage of accusations only serves to taint the Court's impression of the debtor's efforts to produces a Confirmable plan.

## Relief Sought

29.  The movant while attempting a preemptive motion, cites to no authority that enables it to file a plan contemporaneously with the debtor during the exclusivity period.

## Argument

## The Bankruptcy Code does not Allow for a Competing Plan filed During the Exclusivity period

30.  The Exclusivity Period is established in 11 U.S.C. § 1121.  Section 1121 states at its pertinent parts:

> (a) The debtor may file a plan with a petition commencing a voluntary case, or at any time in a voluntary case or an involuntary case.
> (b) Except as otherwise provided in this section, only the debtor may file a plan until after 120 days after the date of the order for relief under this chapter.
> (c) Any party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may file a plan if and only if—
> > (1) a trustee has been appointed under this chapter;
> > (2) the debtor has not filed a plan before 120 days after the date of the order for relief under this chapter; or
> > (3) the debtor has not filed a plan that has been accepted, before 180 days after the date of the order for relief under this chapter, by each class of claims or interests that is impaired under the plan.
> >                                                11 U.S.C. § 1121(a)–(c).

31. "The goal reflected in 11 U.S.C. § 1121, in allowing other interested parties to file a plan of reorganization *after the expiration* of the debtor's exclusivity period, was predicated on the theory that there should be a relative balance of negotiating strength between debtors and creditors during the reorganization process." *In re Texaco, Inc.,* 76 B.R. 322, 325 (Bankr.S.D.N.Y.1987)(Emphasis Added by debtor.)

32. The movant continues to make the usual statements of unfairness with regard to occurrences that are innately part of the Bankruptcy process. However, the statements are disingenuous with regard to the intentions of the movant and failed to establish "cause."

33. The movant is not seeking to facilitate the sale of the property at a fair market value price. Instead, the movant makes strategically unfair offers that offend the debtor's notion of fair play.

34. The movant actually failed to perform any appraisal on the property. This failure comes in light of the movant's representation to the Court during the Motion to Inspect the Property. Said failures evade the necessary analysis for "cause."

35. The movant only sought to harass an already shaken and unstable debtor.

36. The debtor's most assured opportunity to realize her equity is through the sale of the real property. But, also under consideration is the potential for refinancing the property due to its high valuation.

37. Sections 1121(b) and (c) of the Bankruptcy Code contains what is commonly referred to as the "exclusivity period" provisions in a Chapter 11 context. These sections codify those periods of time in which the debtor, and only the debtor, may file a Chapter 11 plan and/or solicit acceptance of the Chapter 11 plan. Creditors and other parties in interest are barred from filing a competing plan during this time.

38. During the exclusivity period the debtor has negotiated a mortgage modification with Capital One Mortgage. The debtor intends to pay all creditors in full in her Chapter 11 plan.

39. Section 1121(c) separates the exclusivity periods in two separate categories. The first is a 120–day period to file a Chapter 11 plan (the "filing period"), and the second is a 180–day period for accepting the Chapter 11 plan (the "acceptance period"). Both of these periods commence after the order for relief has been entered and they both run concurrently. *In re Gibson & Cushman Dredging Corp.,* 101 B.R. 405, 407 (E.D.N.Y.1989).

40. From a practical standpoint, both of these exclusivity periods operate in the following fashion: debtor is allotted 120 days after the order of relief to file a Chapter 11 plan, and, subsequently, debtor shall have an additional 60 days to get said plan confirmed (120 + 60 = 180 days).

41. The movant's preemptive motion is also an "unnecessary' motion in that the debtor's the Chapter 11 plan is a "liquidating plan."

42. Section 1121(c) lists the three instances in which debtor's exclusivity period will conclude. These instances are: (1) the appointment of a Chapter 11 trustee, (2) should debtor not file a Chapter 11 plan within the 120 day filing period, or (3) should debtor not be able to accept a timely filed Chapter 11 plan within the 180 day acceptance period.

43. The three events listed at section 1121(c) are in the disjunctive. Therefore, "[o]nce one of these instances occurs, the debtor's exclusive right to file a plan ends, and competing plans are fai[r] game." *In re Grant Family Farms, Inc.,* 2007 WL 2332138, 2007 Bankr.LEXIS 2779 (Bankr.D.Co.2007).

44. The movant filed the instant motion prior to expiration of the filing of the debtor's Disclosure Statement and Chapter 11 Plan. No other instance can be identified that would warrant the conclusion of the exclusivity period.

45. Section 1121(d) provides debtor the opportunity to move the Court for an extension of the exclusivity periods to file and/or to accept a Chapter 11 plan. This section provides:

> (d)(1) Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120–day period for the 180–day period referred to in this section.
> (2)(A) The 120–day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.
> (B) The 180–day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.
> (2) the time the case is closed or dismissed.
> 11 U.S.C. § 1121(d).

46. By way of section 1121, Congress intentionally created an ongoing tension between the debtor and its creditors "which will hopefully lead to [an] appropriate administration of and a successful conclusion to the Chapter 11 case." *In re Tony Downs Foods Co.,* 34 B.R. 405, 407 (Bankr.Minn.1983).

## **CONCLUSION**

47. Thus, the movant's failure to establish "cause" requires this honorable Court to deny its Motion for an Order (I) Authorizing BWF to immediately file a Chapter 11 Plan and (II) Terminating Exclusivity and Denying any Request to Extend the Initial 120-Day Exclusive Period.

August 24, 2016                                          ***/s/ William C. Johnson, Jr.***
                                                                        William C. Johnson, Jr., Esq.
                                                                        1101 15th St. NW, Suite 203
                                                                        Washington, D.C. 20005
                                                                        (202) 525-2958
                                                                        Fax (301) 288-7473

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this day of August 24, 2016 a copy of the foregoing was sent via first class mail, postage pre-paid to the following:

Office of the U.S. Trustee
115 S. Union Street
Suite 210
Alexandria, VA 22314

Patrick J. Potter
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth St. NW
Washington, D.C. 20036

All creditors

August 24, 2016                                    */s/ **William C. Johnson, Jr.***
                                                                    William C. Johnson, Jr., Esq.