## IN THE UNITED STATES BANKRUPTY COURT
## FOR THE DISTRICT OF COLUMBIA

In re:                                    *
                                          *
MARSHA ANN RALLS                          *         Case No. :  16-00222
                                          *
        Debtor                            *         (Chapter 11)
                                          *
                                          *
*    *    *    *    *    *    *    *    *    *    *    *

## DEBTOR'S DISCLOSURE STATEMENT

## (September 1, 2016)

Comes Now Marsha Ann Ralls, Debtor herein, submits the following as her
Disclosure Statement.

<u>Introduction. Purpose. and Use of this Document</u>

This Disclosure Statement is a prerequisite to the solicitation of acceptance of the
Debtor's Plan of Reorganization submitted and dated of even date herewith ("the Plan").
The purpose of the Disclosure Statement is to furnish the holders of Claims and Interests
with information that, as far as is reasonably practicable under the circumstances, will
enable them to make an informed judgment about the Plan.

*ALL HOLDERS OF CLAIMS AND INTERESTS SHOULD NOTE*
*THAT NO REPRESENTATION CONCERNING THE DEBTOR, HER*
*BUSINESS, OR THE VALUE OF THE PROPERTY HAS BEEN*
*AUTHORIZED OR WILL BE AUTHORIZED OTHER THAN AS SET FORTH*
*IN A DISCLOSURE STATEMENT WHICH HAS BEEN FINALLY*
*APPROVED BY THE COURT OR WHICH HAS BEEN PROVISIONALLY*
*APPROVED, SUBJECT TO POSSIBLE FINAL APPROVAL AT THE TIME*
*OF THE HEARING ON CONFIRMATION OF THE PLAN. ANY*
*REPRESENTATION OR INDUCEMENT OTHER THAN ONE INCLUDED*
*WITHIN SUCH A DISCLOSURE STATEMENT, MADE TO SECURE AN*

*ACCEPTANCE OF A PLAN OF REORGANIZATION IN THIS CASE, IS UNAUTHORIZED, IMPROPER, AND SHOULD NOT BE RELIED UPON. IF AN UNAUTHORIZED REPRESENTATION IS MADE TO OBTAIN ACCEPTANCE OF A PLAN, IT SHOULD BE REPORTED IN WRITING TO THE UNDERSIGNED COUNSEL FOR THE DEBTOR, WHO WILL IN TURN MAKE IT KNOWN TO THE COURT FOR SUCH ACTION AS THE COURT MAY DEEM APPROPRIATE.*

The information contained herein *HAS NOT BEEN SUBJECTED TO AN AUDIT, TO A RECENT APPRAISAL OR OTHER INDEPENDENT VALUATION*. The values set forth for property represent the Debtor's best estimates as to such values and, unless specifically stated otherwise, do not reflect costs of sale. In arriving at those estimates, the Debtor principally relied upon her realtor's knowledge and experience in the real estate sales business. *THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.*

<u>Voting Instructions; Solicitation of Acceptances</u>

Enclosed with this Disclosure Statement, if it has been approved, is a ballot, provided so that Creditors may vote either for or against the Plan, along with a stamped envelope for your convenience. *IF THE COURT HAS SCHEDULED A HEARING ON CONFIRMATION, PLEASE NOTE THAT THE ORDER SCHEDULING THE HEARING ALSO SETS A DEADLINE FOR THE FILING OF BALLOTS AND THAT BALLOTS, TO BE COUNTED, MUST ACTUALLY HAVE BEEN RECEIVED BY THE UNDERSIGNED COUNSEL ON OR BEFORE THAT DEADLINE, AS OF 5:00 P.M. EASTERN TIME, REGARDLESS OF POSTMARK OR DATE OF TRANSMITTAL. <u>LATE RECEIVED BALLOTS WILL NOT BE COUNTED.</u>*

*IN ORDER TO BE COUNTED, BALLOTS MUST BE SENT TO WILLIAM C.*

*JOHNSON, ESQUIRE, 1101 15*<sup>TH</sup> *ST., NW, SUITE 203, WASHINGTON, D.C. 20005.*

*BALLOTS SHOULD NOT BE SENT TO THE COURT.*

Subject to the specific provisions of 11 U.S.C. Section 1124, a Creditor whose claim is impaired is deemed to include any Creditor who will receive less than full cash payment for the allowed amount of its Claim or whose pre-petition rights have otherwise been altered in any way by the provisions of the Plan.  Claims of certain Creditors may be disputed by the Debtor.  The holders of disputed Claims may vote for or against the Plan only to the extent that their Claims have been allowed for the purposes of voting.  Similarly, the holders of Claims which have been scheduled by the Debtor or filed with the Court and have been designated as contingent or unliquidated may vote only to the extent that their Claims have been allowed by the Court for the purpose of voting.

The ballot included with this Disclosure Statement, if any, ***IS NOT A PROOF OF CLAIM AND WILL NOT BE TREATED AS SUCH FOR PURPOSES OF VOTING OR OTHERWISE.*** The schedules of Claims against the Debtor may be inspected at the Bankruptcy Court or online utilizing PACER.

***ONLY THOSE VOTES THAT ACTUALLY ACCEPT OR REJECT THE PLAN MAY BE COUNTED.***

A Class of Creditors is deemed to have accepted the Plan if the Plan has been accepted by the Holders of at least two thirds in dollar amount and a majority in number among the Holders allowed for the purposes of voting, ***WHICH ACTUALLY VOTE ON THE PLAN.***

At the hearing on Confirmation, the Bankruptcy Court will receive and consider a ballot report which will be prepared by the undersigned counsel concerning the votes received for acceptance or rejection of the Plan by the parties entitled to vote thereon.  The Court will also then consider whether or not the Plan satisfies the various

requirements of the Bankruptcy Code, including its feasibility and whether it is in the best interests of Creditors.

With respect to each impaired Class of Claims, in order to confirm a Plan, the Court must find that each holder of a Claim allowed for purposes of voting or of an interest in such Class has accepted the Plan or else that each such holder will receive or retain on account of its Claim or Interest property of a value, as of the Effective Date of the Plan, that is not less than that holder would receive if the Debtor were liquidated under the provisions of Chapter 7 of the Bankruptcy Code, on the Effective Date. The Court may confirm the Plan even if the Plan is not accepted by all of the impaired Classes, provided that the Court finds that the Plan was accepted by at least one impaired Class (not counting the votes of insiders) and that it does not discriminate unfairly against, and is fair and equitable to, all non-accepting impaired Classes. The Debtor intends to rely on these "cram down" provisions, if necessary, in seeking confirmation of the Plan.

The Debtor believes that the Plan is feasible, fair, and equitable, and in the best interests of Creditors and the Debtor, and that the Plan does not discriminate unfairly. Accordingly, the Debtor recommends that you *VOTE FOR THE PLAN.*

*THIS DISCLOSURE STATEMENT, INCLUDING THE PLAN, SHOULD BE READ IN ITS ENTIRETY. THE WORDS DEFINED IN ARTICLE I OF THE PLAN, WHEN USED IN THIS DISCLOSURE STATEMENT, CARRY THE SAME MEANING GIVEN TO THOSE TERMS BY THE DEFINITIONS IN ARTICLE I OF THE PLAN. FURTHERMORE, AT THE TIME OF FILING, THIS DISCLOSURE STATEMENT CONSTITUTED ONLY A "PROPOSED" DISCLOSURE STATEMENT. UPON APPROVAL BY THE COURT, A DISCLOSURE STATEMENT BECOMES AN "APPROVED DISCLOSURE*

*STATEMENT." UNLESS THE COURT SPECIFICALLY AUTHORIZES TO*

*THE CONTRARY, ONLY AN "APPROVED DISCLOSURE STATEMENT"*

*MAY BE GENERALLY DISSEMINATED TO CREDITORS IN CONJUNCTION*

*WITH THE SOLICITATION OF ACCEPTANCES OF A PLAN.*

I.      GENERAL INFORMATION AND EVENTS WHICH LED TO FILING

A.      Events Leading to Bankruptcy

The Debtor is an individual residing in a property located in the District of

Columbia.  The address of the real property is 1516 31st. St., NW, Washington, D.C.

20007.  The debtor operates as an entrepreneur in the field of Fine Arts.  The debtor

services international clients addressing their Art needs and desires on a contractual

basis.

On or about November 8, 2011, the debtor's corporate entity, "The Ralls

Collection, Inc.," borrowed $500,000.00 at 13% per annum from the creditor BWF

Private Loan Fund, LLC.  The "Ralls Collection, Inc." received a total sum of

$391,000.00 from the proceeds of the loan from BWF Private Loan Fund, LLC.  The

creditor placed $65,000.00 in an interest reserve account.  The purpose of the interest

reserve account was to serve as interest payments for a period of one year for the loan.

The loan term commenced January 1, 2012.   The maturity date of the loan was

January 1, 2013.  In addition thereto, the debtor paid the creditor BWF Private Loan

Fund, LLC a $20,0000.00 loan fee and closing costs.

The debtor, individually, signed an Unconditional Guaranty Agreement, making

her individually liable for the loan made to the Ralls Collection, Inc. by the creditor

BWF Private Loan Fund, LLC.

Pursuant to the Loan Agreement, the creditor BWF Private Loan Fund was given

a secured interest in the collateral identified as 1516 31st St. NW, Washington, D.C.

20007.  The debtor executed an "Indemnity Deed of Trust and Security Agreement, Assignment of Leases and Rents" to provide security for the loan.  The property located at 1516 31st St., NW Washington, D.C. 20007 was the personal residence.

Pursuant to the loan transaction, the creditor BWF Private Loan Fund, LLC required the debtor to sign loan documents specifically identifying the debtor's use of the funds.  The debtor was required to identify "business related" uses of the loan proceeds only. The debtor acquired the loan proceeds for primarily household and personal use.

On or about November 30, 2012, the debtor defaulted on the loan.  On May 15, 2013, BWF filed a complaint in the D.C. Superior Court commencing the case captioned *BWF Private Loan Fund, LLC v. Marsha Ann Ralls and The Ralls Collection, Inc.*, Case No. 13-0003373 (the "Superior Court Case") seeking a judgment liquidating BWF's claims and authorizing it to foreclose on the Property and other collateral posted by the Debtor to secure the Guaranty.

The debtor raised claims against the creditor BWF Private Fund, LLC.  The Complaint made allegations based upon the debtor's capacity to contract at the time she entered the Loan Agreement on the behalf of the Ralls Collection, Inc.  The action did not address the debtor's Consumer Protection claims.

On January 28, 2015, the Ralls Collection filed for Bankruptcy protection.  The bankruptcy case was identified as case no. 15-00043.  The Ralls Collection identified the indebtedness owed to creditor BWF Private Loan Funds, LLC.  The bankruptcy filing stayed the foreclosure proceedings.

On June 9, 2015, after BWF obtained relief from the automatic stay, the Honorable Judge Thomas J. Motley of the D.C. Superior Court entered judgment for

BWF in the sum of $1,202,472.87 (the "Judgment") and authorized BWF to foreclose on the Property.

On or about October 5, 2015, the Debtor appealed the Judgment rendered by the Honorable Thomas J. Motley to the District of Columbia Court of Appeals, and on December 8, 2015, the D.C. Superior Court denied the Debtor's motion for a stay pending appeal.

The creditor BWF Private Fund, LLC proceeded with the foreclosure of the debtor's real property located at 1516 31st St. NW, Washington, D.C. 20007.  The foreclosure sale was scheduled to occur May 5, 2016.  On or about May 4, 2016, the debtor filed for Relief under Chapter 11 of the United States Bankruptcy Court.

The debtor has substantial equity in the subject property of the estate.  More importantly, this property represents the focal point of the debtor's investments.  The property is a located in the exclusive area of Georgetown in Washington, D.C. and has its value ranges from 2.4 Million to $4.2 million.  This signifies potential for a realization of substantial equity in the subject property.

The Property is in good condition, very well maintained and the debtor intends to market it for sale as means to fund her Chapter 11 Plan of Reorganization.  As a result of its location, the Property has been able to hold its value and the property value will likely increase in the future.  The debtor has considered refinancing as an option for a successful reorganization.  The debtor will continue to make monthly payments to the first Deed of Trust holder, Capital One.  The debtor has been approached several lenders, investors and developers about the possibility of placing the property on the market for sale

The current value of the property has enabled the debtor to propose a Plan of

Reorganization as described elsewhere in this Disclosure Statement.

            B.        Significant Events During the Bankruptcy Case

The primary issue facing the debtor during the pending bankruptcy has been the marketing of the property to maximize its value. The debtor has interviewed several realtors and has decided to employ the real estate team at Washington Fine Properties.

            C.        Projected Recovery of Avoidable Transfers

The debtor does not intend to pursue preference, fraudulent conveyances, or other avoidance actions. The Debtor has not yet completed its investigation with regard to pre-petition transactions. If you received a payment or other transfer within 90 days of the bankruptcy, or other transfer avoidable under the Code, the Debtor may seek to avoid such transfer.

            D.        Claims Objections

Except to the extent that a claim is already allowed pursuant to a final non-appealable order, the Debtor reserves the right to object to claims. Therefore, even if your claim is allowed for voting purposes, you may not be entitled to a distribution if an objection to your claim is later upheld. The procedures for resolving disputed claims are set forth in Article V of the Plan.

E.      Current and Historical Financial Conditions

The identity and fair market value of the estate's assets are listed in Exhibit B.

The collateral market valuations were performed at the request of debtor's counsel.  The

most recent post-petition operating reports filed since the commencement of the Debtor's

bankruptcy case are set forth in Exhibit A.  The debtor's Projected Plan payments shall be

made upon the sale of the debtor's real property.


II.      OVERVIEW OF ASSETS AND MAJOR SECURED CLAIMS

The debtor's principal assets consist of one (1) property located in Washington,

D.C.

1.      1516 31st St. NW, Washington, D.C. 20007

The 1516 31st St., NW is the primary residence of the debtor.  It is a single family

residence located in Washington, D.C.   The original purchase price for the property was

$878,000.00 pursuant to a Deed of Trust Note dated April 18, 1997.  The second

position Deed of Trust and Promissory Note dated November 8, 2011 is currently valued

at $1,600.000.00. The projected value of the property at the time of Bankruptcy filing

was $2,352,000.00.  The appraised value of the real property at the time filing this

Disclosure Statement is $3,900,000.00. Exhibit B.


III. SIGNIFICANT EVENTS WHILE IN CHAPTER 11

At the time the case commenced, the Debtor's income was inconsistent due to

the fluctuations in her business as an Art Curator and Consultant.  The income of the

debtor has stabilized and been consistent.  The Exhibit A identifies the monthly

operating reports of the debtor through September 1, 2016.  See Exhibit A.

The debtor has been the subject of three (3) "Motions for Relief" filed by the

creditor BWF Private Fund, LLC.

On May 5, 2016, the Court denied BWF's first Motion for Relief from the

Automatic Stay to proceed with the foreclosure sale of the Property. The Court's

reasons are set forth in the hearing transcript and subsequent memorandum decision.

*See* Docket Entry 11–12. The two principle reasons the Court denied BWF's first lift-

stay motion were that the Debtor (a) waived her exemption in the portion of the

Property subject to liens, and (b) the debtor would have a chance to successfully

reorganize under Chapter 11 by filing a liquidating plan.

On May 27, 2016, BWF filed a second lift-stay motion.  The movant requested

relief from the automatic to allow the debtor to continue the appeal of the D.C. Superior

Court judgment.  The debtor has consistently pursued her appeal.

On June 20, 2016, BWF filed the  Motion (1) to Enforce the Duties of the Debtor

In Possession, (2) For Authority under Bankruptcy Rule 2004 to obtain Documents and

if Warranted Examine the Debtor, and (3) for Adequate Protection, Including Authority

to Inspect Property.

On June 29, 2016, BWF filed a motion to lift stay motion. BWF claimed its

interest in the Property is not adequately protected. BWF's claimed its collateral

position continues to erode because of the Debtor's failure to timely pay all monthly

sums due Capital One and BWF.   During a deposition of the debtor all of the BWF's

claims in the motion were rebutted.

On August 10, 2016, BWF filed BWF Private Loan Fund, LLC's Motion for an

Order (I) Authorizing BWF to Immediately File a Chapter 11 Plan and (II) Terminating

Exclusivity and Denying Any Request to Extend the Initial 120-Day Exclusive Period

and (B) Hearing.  The debtor opposed the motion.  The debtor timely filed her Chapter

Disclosure Statement and Chapter 11 Plan of Reorganization

## IV. CONCEPT AND STRUCTURE OF THE PLAN OF REORGANIZATION

The Debtor's proposed Plan of Reorganization is designed to pay all secured

creditors 100 cents on the dollar while at the same time stabilizing the Debtor's finances.

The Debtor shall commit a fixed amount of money to be shared among the unsecured

Creditors, the Debtor's Plan guarantees that all Creditors will be made whole.

The Internal Revenue Service is a Priority Creditor, having a claim in the amount

of $24,153.890.  This priority debt represents the past due tax debt of the debtor.  The

debtor owes no other priority claims.  Finally, the Internal Revenue Service ($1,388.92)

and Joel Aronson, Esq. are the only General Unsecured Creditors and will receive cash

payments in full.  Attorney Joel Aronson recently identified the balance owed to him as

$-0-.  However, the Proof of Claim has not been withdrawn.  The unsecured creditors are

guaranteed to receive 100 cents on the dollar.

## IV. CLAIMS AGAINST THE CHAPTER 11 ESTATE, THEIR PROPOSED TREATMENT UNDER THE PLAN, AND HOW THE PLAN RESULTS WILL BE ACHIEVED

The various Claims against the Chapter 11 estate have been grouped into Classes.

Each Secured Claim has been placed in a separate Class owing to the fact that no two

such Claims are alike; each is secured by a different lien on property of the estate.

General Unsecured Claims shall be aggregated in a single class. In all, there are three (3)

different Classes. These Classes have then been subdivided in the Plan into two groups,

according to whether or not they are considered to be "impaired" or "unimpaired."

An "impaired" Class includes any Creditor whose pre-petition rights have been altered in any way by the terms of the Plan, even if the alteration has been an improvement over the pre-petition terms. Any Class of Claims that is to be paid exactly in accordance with the terms of the pre-petition obligation or is to receive payment in full on the Effective Date of the Plan, defined as a date thirty (30) days after Confirmation, is considered "unimpaired.

Unclassified Claims. The only known administrative claims are the claims of counsel to the debtor in possession for fees and reimbursement of expenses and the obligation to pay the fees of the U.S. Trustee. Counsel fees will be paid from estate funds in accordance with the approved terms by which counsel was employed; thus, they will not diminish the amounts needed to pay Creditors. Fees to the U.S. Trustee are current, however, will remain current prior to approval of this plan of reorganization.  Impairment does not relate to this Class.

Only "impaired" Classes may vote to accept or reject a Plan; "unimpaired" Claims are deemed to have accepted the Plan. *All Classes listed below are considered to be "impaired" unless indicated otherwise.* The Classes and their treatment in the proposed Plan are as follows:

Class 1. Priority Claims - The tax priority claims of the Internal Revenue Service. To the extent that any exist they would be paid in full under the plan.  This class is unimpaired.

The Debtor intends to pay the priority taxes in the amount of $24,153.89 with the Court's permission, from the proceeds from the sale of the real property as contemplated by this plan of reorganization.

Class 2. The Allowed Secured Claim of Capital One Bank, N.A. for 1516 31st St., NW, Washington, D.C. 20007 in Class 2 is current post-petition and will continue to be paid according to the terms of the applicable note and deed of trust until paid in full, whether by sale of the Property or otherwise. All terms of the pre-petition loan documents will remain in effect. The Class 2 Creditor will retain its lien after confirmation until this Claim is paid in full. Class 2 is impaired.

The Debtor intends to modify the mortgage and reduce the monthly mortgage payment.

Class 3. The Allowed Secured Claim of BWF Private Fund, LLC for 1516 31st St., NW, Washington, D.C. 20007 in Class 3 is fully matured loan that has been deduced to judgment in the D.C. Superior Court case  Court entered Judgment in favor of the Plaintiff BWF Private Loan Fund, LLC, and against the Defendants Marsha Ann Ralls in the sum of $1,202,472.87 which include $490,000.00 principal; plus two months of accrued interest on principal at 13% in an amount of $10,970.55; plus accrued interest on principal at 25% per annum commencing February 1, 2013 up through and including May 6, 2015 in an amount of $280,729.17; Plus the Exit Fee Payable by Borrower per section 10 of the Promissory Note in the amount of 500.00; Plus the Release Fee Payable by Borrower per section 11.1 of the Deed of Trust in the amount of 500.00; Plus attorneys' fees and costs in an amount of $419,773.15; Plus, post judgment interest, at the contract rate of 25% per annum for interest accrued on the $490,000 principal debt until paid or satisfied, at a per diem amount of $340.28 after May 6, 2015. The Class 3 Creditor will retain its lien after confirmation until this Claim is paid in full. Class 3 is impaired.

Class 4 -  The holders of Allowed Class 4 Claims shall receive payment, without

interest, with the first such distribution to take place after the Effective Date.  The

payment to the Class 4 general unsecured creditors after consummation of the sale of the

real property.  The allowed Class 4 Claims are going to be paid 100 percent (100%).  The

Reorganized Debtor shall have the right to prepay all or any part of the amount due to

Class 4 at any time.  The amount paid to the Class 4 Creditors in any distribution shall be

calculated *pro rata* according to the allowed amounts of the allowed Class 4 Claims.

Class 4 is impaired.

## VI. CONFIRMATION REQUIREMENTS AND PROCEDURES

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or

(b) of the Code.  These include the requirements that:  the Plan must be proposed in good

faith; at least one impaired class of claims must accept the plan, without counting votes of

insiders; the Plan must distribute to each creditor and equity interest holder at least as

much as the creditor or equity interest holder would receive in a chapter 7 liquidation

case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan

must be feasible.  These requirements are <u>not</u> the only requirements listed in § 1129, and

they are not the only requirements for confirmation.

### A.    Who May Vote or Object

Any party in interest may object to the confirmation of the Plan if the party

believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan.  A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that Class 1 is unimpaired and that holders of claims in this class, therefore, do not have the right to vote to accept or reject the Plan.

1.    *What Is an Allowed Claim or an Allowed Equity Interest?*

Only a creditor or equity interest holder with an allowed claim or an allowed equity interest has the right to vote on the Plan.  Generally, a claim or equity interest is allowed if either (1) the Debtor has scheduled the claim on the Debtor's schedules, unless the claim has been scheduled as disputed, contingent, or unliquidated, or (2) the creditor has filed a proof of claim or equity interest, unless an objection has been filed to such proof of claim or equity interest.  When a claim or equity interest is not allowed, the creditor or equity interest holder holding the claim or equity interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or equity interest for voting purposes pursuant to Rule 3018(a) of the Federal Rules of Bankruptcy Procedure.

2.      *What Is an Impaired Claim or Impaired Equity Interest?*

As noted above, the holder of an allowed claim or equity interest has the right to vote only if it is in a class that is *impaired* under the Plan.  As provided in § 1124 of the Code, a class is considered impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.

3.      *Who is **Not** Entitled to Vote*

The holders of the following five types of claims and equity interests are *not* entitled to vote:

a.)      holders of claims and equity interests that have been disallowed by an order of the Court;

b.)      holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

c.)      holders of claims or equity interests in unimpaired classes;

d.)      holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

e.)      holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

f.)      holders of administrative claims

***Even If You Are Not Entitled to Vote on the Plan, You Have a Right to Object to the Confirmation of the Plan and to the Adequacy of the Disclosure Statement.***

4.      *Who Can Vote in More Than One Class*

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim, or who otherwise hold claims in multiple classes, is entitled to accept or reject a Plan in each capacity, and should cast one ballot for each claim.

**B.      Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed later in Section [B.2.].

1.      *Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

2.      *Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code.  A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan.  The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a "cramdown" confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.*

## C.    Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.  A liquidation analysis is attached to this Disclosure Statement as Exhibit C.  This is a liquidating plan whereby the Real Property of the debtor identified as 1516 31st St. NW, Washington, D.C. 20007 is being sold to satisfy creditors.

## VII. FEASIBILITY: PLAN OBLIGATIONS RELATED TO PERFORMANCE

The test for feasibility requires a showing of a reasonable likelihood that the Debtor will be able to perform its obligations under the Plan; certainty of success is not required.  In this case, an analysis of feasibility primarily involves consideration of the debtor's projected income and expenses to determine whether or not she will be able to make the payments to Creditors necessary to carry the many Plan obligations.

Total anticipated net funding available is based upon the debtor's income from the sale of her real property. The real property's appraised value of $3,900,000.00 greatly surpasses the all of the debtor's outstanding obligations. See Exhibit B. Plan payments will occur, with the Court's permission, upon the sale of the real property. Based on these projections, it appears that the Debtor's Plan is feasible.

## VIII. PROBABLE TAX CONSEQUENCES

The 2005 amendments to the Bankruptcy Code require a statement as to likely tax consequences of the Plan. The debtor therefore referred the matter to her attorney, primarily to determine whether or not there would be significant impact on plan effectiveness as a result of capital gains resulting from the sale of property. Unfortunately, no definitive prediction is possible. It was the view of the attorney that, while it was likely the property sale would result in a reportable capital gain, it was impossible at this time to predict whether or not that gain would translate into a tax liability. Therefore, no definitive statement is possible as to tax impact.

## IX. ASSETS AND COMPARISON OF RESULTS UNDER THE PROPOSED PLAN WITH CHAPTER 7 LIQUIDATION AND FORECLOSURE

There is a significant risk that a failure to confirm the Plan as proposed would soon lead to a liquidation of the Debtor's nonexempt assets, most likely under foreclosure rather than Chapter 7. A comparison of results under the Plan with those expected in a Foreclosure indicates a significant risk that Creditors would not be paid in full in a liquidation scenario.

The BWF Private Loan Fund is the only creditor placing the debtor under the threat of foreclosure. With only the superior lien position of Capital One before it, the

BWF would likely foreclose on the property and take back the property for the value of its lien.  Thus, leaving general unsecured creditors unpaid.

1. Assumptions for Purposes of the Liquidation Analysis

In the event that the Debtor's Plan is not confirmed and cannot be rendered confirmable by amendment, the only possibilities are dismissal or conversion of the case to Chapter 7.  It is unlikely in either of these scenarios that secured creditors will agree to significant reductions in debt service or restructuring of secured loans.  However, the Debtor's resources are insufficient to carry most of the secured debt without such a restructuring, which as a practical matter is possible only in Chapter 11.

In a Chapter 7 conversion situation, which is considered the most likely scenario, it is fair to say that these properties would go to foreclosure soon after the case is converted.

Because the property is at risk here, it is not possible to predict with any exactness what would happen in such a situation. But if it is assumed, for example, that a foreclosure sale would result in a sale resulting in net proceeds just 30 percent lower than fair market value (allowing a 25 percent reduction in price and 5 percent for expenses) - certainly a conservative estimate - the results would at least provide for payment of the debtor's unsecured debts. The results of a forced sale of the Debtor's real estate asset would be particularly devastating to the debtor.  Assuming sales at foreclosure, and assuming that the creditors in first position do not simply buy in for the amount of their Claims, it is fair to predict that the prices achieved and costs of sale would result in a discount of at least 30 percent from fair market value.

The debtor projects a small surplus after a chapter 7 given the present fair market

value of the property.  It is difficult to estimate the costs of administration, but compared

to a foreclosure sale, certainly it is likely that proceeds would be available for distribution

to General Unsecured Claims.

X  EFFECT OF CONFIRMATION OF PLAN

A.     **DISCHARGE OF DEBTOR**

Discharge. Confirmation of the Plan does not discharge any debt provided for in

the Plan until the court grants a discharge on completion of all payments under the Plan,

or as otherwise provided in § 1141(d)(1)(A) of the Code.  Debtor will not be discharged

from any debt excepted from discharge under § 1141(d)(3) of the Code, except as

provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

B.     **Modification of Plan**

The Plan Proponent may modify the Plan at any time before confirmation of the

Plan.  However, the Court may require a new disclosure statement and/or revoting on the

Plan.

C.     **Final Decree**

Once the estate has been fully administered, as provided in Rule 3022 of the

Federal Rules of Bankruptcy Procedure, the Plan Proponent, or such other party as the

Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to

obtain a final decree to close the case.  Alternatively, the Court may enter such a final

decree on its own motion.

X1. CONCLUSION

The Debtor believes it is clear from this analysis that its Plan offers a far better return

than any alternative scenario as all unsecured creditors would receive 100 cents on the

dollar. The Plan is fair, reasonable, and feasible and, if confirmed, offers the best possible

hope for a recovery.


September 1, 2016                              Respectfully Submitted,

                                              /s/ *William C. Johnson, Jr.*
                                              _____
                                              William C. Johnson, Jr.
                                              #470314
                                              1101 15th St. NW, Suite 203
                                              Washington DC 20005
                                              (202) 525-2958
                                              (202) 431-2650

## CERTIFICATE OF SERVICE

        I hereby certify that a copy of the foregoing was served electronically, and by first

class mail, postage prepaid this 1st day of September, 2016 on the following:


Office of the U.S. Trustee
Bradley Jones
115 S. Union Street
Plaza Level-Suite 210
Alexandria, VA 22314

All Creditors on Mailing Matrix

September 1, 2016                        /s/ **William C. Johnson, Jr.**
                                        William C. Johnson, Jr. #470314