The document below is hereby signed.

Signed: November 18, 2016



_S. Martin Teel, Jr._
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MARSHA RALLS, | ) | Case No. 16-00222 |
| | ) | (Chapter 11) |
| Debtor. | ) | Not for publication in |
| | ) | West's Bankruptcy Reporter. |

MEMORANDUM DECISION AND ORDER
RE MOTION TO RECONSIDER AS SUPPLEMENTED

The debtor filed a motion (Dkt. No. 219) ("*Reconsideration Motion*") seeking reconsideration of the court's order confirming the plan filed by BWF Private Loan Fund, LLC ("BWF"), and seeking, in the alternative, a stay of that order. The confirmed plan calls for the debtor to vacate her home ("the Property") and for a sale by a broker hired by BWF on a set schedule. The court issued an *Order* of November 8, 2016, setting forth the court's preliminary views regarding the *Reconsideration Motion*. The debtor supplemented the *Reconsideration Motion* via the debtor's November 10, 2016 *Response* responding to the court's *Order* of November 8, 2016. BWF filed an opposition to the *Reconsideration Motion* and the November 10, 2016 *Response*.

I

RULE 59(e) STANDARDS

The *Reconsideration Motion* was filed within 14 days after entry of the order confirming BWF's plan.  Even though, at paragraph 14, the debtor's *Reconsideration Motion* invoked Federal Rule of Bankruptcy Procedure 9024 (dealing with the extent to which Fed. R. Civ. P. 60 is applicable in bankruptcy cases), the motion is a timely motion under Fed. R. Bankr. P. 9023, which sets a 14-day time limit, applicable in a bankruptcy case, for filing a Fed. R. Civ. P. 59 motion.  Because it seeks reconsideration within the time limit for a Rule 59 motion, the *Reconsideration Motion* is treated as a Rule 59(e) motion to alter or amend the confirmation order.

"Rule 59(e) motions 'need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice.'" *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (District of Columbia Cir. 1998) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (District of Columbia Cir. 1996) (per curiam)).  Moreover, "a losing party may not use a Rule 59 motion to raise new issues that could have been raised previously."  *Kattan by Thomas v. District of Columbia*, 995 F.2d 274, 276 (District of Columbia Cir. 1993).

II

THE ARGUMENTS RAISED BY THE
*RECONSIDERATION MOTION* FOR SEEKING RULE 59(e) RELIEF

The *Reconsideration Motion*, in seeking an alteration of the confirmation order, pointed to (1) an appeal ("the Appeal") in the District of Columbia Court of Appeals and the alleged errors in the Superior Court's judgment upholding BWF's claim and the validity of its lien; (2) the equity in the Property; (3) the Appeal's impact on the debtor's reorganization efforts; and (4) the confirmed plan's failure to provide any mechanism to protect the Debtor and the Estate's interest in the outcome of the Appeal.  The *Reconsideration Motion* also states:

> 35. . . . [T]he confirmed plan fails to provide any mechanism to protect the Debtor and the Estate's interest in the outcome of the Appeal, which was pending at the time the Confirmation Order was entered. Inasmuch as the Confirmation Order arguably has a res judicata effect on the Appeal, the Confirmation Order should be vacated to protect the Debtor and the Estate's rights.
> *   *   *
> 39. . . . Under the Confirmation Order, the Debtor is required to sell and vacate Property under conditions that are onerous, unreasonable, unnecessary, and will not result in maximizing the value of the Property.  Equally important, BWF's Judgment includes hundreds of thousands of dollars of illegal interest, and casts significant doubt on whether BWF is entitled to the more than $500,000.00 in attorney's fees it assessed against the Debtor and the Property.

Taking these points, one by one, the *Reconsideration Motion* (putting aside any new points, addressed later, that were raised in the debtor's November 10, 2016 *Response*) does not justify

3

anything other than an order clarifying that the confirmation order and the plan do not bar the debtor's challenging BWF's claim in this court based on the outcome of the Appeal.

(1) <u>The Appeal in the District of Columbia Court of Appeals</u>. The debtor seeks to have the court vacate or stay the confirmation order because the debtor believes the Superior Court's judgment upholding BWF's claim and its lien against the Property will be vacated on appeal.  This court must give full faith and credit to the Superior Court's judgment.  This court is not the appropriate court to examine whether the Superior Court's judgment was in error.  *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983); Gray v. Poole, 275 F.3d 1113, 1119 (District of Columbia Cir. 2002) ("The *Rooker-Feldman* doctrine prevents lower federal courts from hearing cases that amount to the functional equivalent of an appeal from a state court."). Accordingly, so long as the judgment entered by the Superior Court of the District of Columbia remains in place, the appeal to the District of Columbia Court of Appeals does not furnish any basis for overturning the confirmation order.

(2) <u>The Equity in the Property</u>.  There may well be equity in the Property, but that is not a basis for granting Rule 59(e) relief.  The existence of equity would not demonstrate error in

4

the court's entering the confirmation order.

(3) <u>The Appeal's Impact on the Debtor's Reorganization Efforts</u>.  The Superior Court judgment upheld BWF's claim for principal and interest, upheld BWF's lien, and authorized BWF to proceed to a foreclosure of that lien.  The debtor obtained no stay of that judgment, and as indicated above, that judgment must be given effect in this court so long as it has not been vacated.  Accordingly, there was no error in this court's declining to treat the Appeal as showing that the debtor could reorganize.  There was no error in the court's giving full faith and credit to the Superior Court judgment, and thus no error in treating BWF's lien as valid, and, in turn, there was no error in the court's terminating exclusivity based on the debtor's failure to take reasonably prompt steps to address selling the Property to pay off BWF's lien.

(4) <u>The Confirmed Plan's Alleged Failure to Provide Any Mechanism to Protect the Debtor and the Estate's Interest in the Outcome of the Appeal</u>.  BWF has made clear that it does not oppose the court's clarifying that under the plan the debtor has the right to challenge BWF's claim in this court based on the outcome of the Appeal even after a sale is completed.  An order clarifying the Plan in that regard will obviate the debtor's res judicata argument.

(5) <u>Plan's Conditions That Are Allegedly Onerous,</u>

Unreasonable, and Unnecessary</u>.  Under the Confirmation Order, the debtor is required to sell and vacate Property under conditions that the debtor contends "are onerous, unreasonable, unnecessary, and will not result in maximizing the value of the Property." This contention does not demonstrate "an intervening change of controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice" as required by *Firestone v. Firestone*, 76 F.3d 1205 at 1208, to warrant granting Rule 59(e) relief.  There was no clear error in the court's confirming BWF's plan.  BWF's broker outlined at the confirmation hearing a careful plan for marketing and optimizing the sale's price to be achieved for the Property.  The conditions imposed were part of the broker's careful plan.  The debtor has not shown any error in the court's confirming BWF's plan based on the plan's provisions regarding vacating and selling the property.

(6) <u>Alleged Illegal Interest Included in Superior Court Judgment</u>.  The debtor contends that "BWF's Judgment includes hundreds of thousands of dollars of illegal interest, and casts significant doubt on whether BWF is entitled to the more than $500,000.00 in attorney's fees it assessed against the Debtor and the Property."  The judgment is entitled to res judicata effect unless and until the District of Columbia Court of Appeals vacates or modifies that judgment.  The judgment is, at this juncture, a valid judgment entitled to respect by this court.

The contention that the judgment includes illegal interest must be rejected.  Similarly, the contention that the judgment (perhaps meaning the Appeal of the judgment) casts doubt on BWF's assessed attorney's fees must similarly be rejected.

III

STANDARD APPLICABLE TO REVIEW OF NEW
ARGUMENTS RAISED IN THE NOVEMBER 10, 2016 *RESPONSE*

In her November 10, 2016 *Response* to the court's *Order* of November 8, 2016, the debtor renews previous arguments and makes numerous additional arguments.  Prior to November 10, 2016, the debtor's time to file a motion under Fed. R. Civ. P. 59(e) had expired.  Accordingly, any new arguments raised in the *Response*, unless amplifying grounds previously asserted under Rule 59(e) for reconsidering the confirmation order, appear to constitute a request for reconsideration under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b).  Relief under Rule 60(b) is generally more difficult to obtain than relief under Rule 59(e).

IV

ARGUMENTS RAISED BY
DEBTOR'S *RESPONSE* OF NOVEMBER 10, 2016 REGARDING
PAYING BWF CLAIM NO. 3 AT CLOSING AND REGARDING CREDIT BIDDING

The debtor's November 10, 2016 *Response* argues that the confirmed plan bars any challenge to *BWF's Allowed Secured Claim* (a defined term under the confirmed plan).  The confirmed plan provides:

> 1.9  "BWF's Allowed Secured Claim" includes the

7

> following, all of which are secured by the Property: (i) Claim No. 3 filed by BWF in the amount of $1,343,098.11 as of July 31, 2016 ("BWF Claim No. 3"), which continues to accrue interest at the rate of $340.28 per day; (ii) Claim No. 4 filed by BWF in the amount of $420,196.11 as of July 31, 2016 ("BWF Claim No. 4"); and (iii) the fee payable to the Broker pursuant to the Listing Agreement and all other customary transaction costs incurred by BWF in connection with the Sale of the Property.  BWF reserves all rights to amend BWF Claim No. 3 and BWF Claim No. 4.

The debtor failed to object to this provision.  The provision was included in the plan in order to define the claim that BWF would be allowed to credit bid, as Section 5.4 of the confirmed plan provided:

> "Preservation of Credit Bid Rights".  The credit bid rights of Capital One and BWF pursuant to section 363(k) of the Bankruptcy Code are fully preserved.  By way of example (and not limitation), if BWF submits an Offer by the Offer Deadline, then **BWF may offset the full amount of BWF's Allowed Secured Claim against its purchase price**.  Notwithstanding anything in the Debtor's schedules or amended schedules or any objections to BWF's Allowed Secured Claim, **BWF can credit bid the full amount of BWF's Allowed Secured Claim unless objected to and disallowed by the Court.**

(Emphasis added.)  The provision also defines "BWF Claim No. 3" which the plan (at § 8.1(a)) provides will be paid at closing, by stating:

> Notwithstanding anything to the contrary, pursuant to the Confirmation Order, BWF Claim No. 3 is an Allowed Claim, and any objection filed to such claim shall not prevent payment of such claim at the Closing from the sale proceeds of the Property.

The debtor contends that the provision allowing BWF Claim No. 3 to be paid at closing and the provision allowing BWF to credit

bid *BWF's Allowed Secured Claim* are improper, but the debtor failed to raise these contentions as objections to confirmation of the plan.

A.

PAYMENT OF BWF CLAIM NO. 3 AT CLOSING

BWF filed a claim on September 1, 2016, and labeled Claim No. 3-1 on the court's Claims Register and referred to by the plan as "BWF Claim No. 3." It asserted a claim for $1,343,098.11 that included interest through August 31, 2016 (**not** July 31, 2016, as set forth in the plan's § 1.9 quoted above) plus interest accruing thereafter. On November 4, 2016, Claim No. 3-1 was amended (and, as amended, was docketed as Claim No. 3-2 on the court's Claims Register to state a claim for $1,365,216.31 to correctly reflect additional interest accrued after August 31, 2016, and through November 4, 2016. Claim No. 3-1 is deemed amended by Claim No. 3-2 to correctly reflect that interest included in the $1,343,098.11 on Claim No. 3-1 was through August 31, 2016, not July 31, 2016. However, beyond that minor issue, Claim No. 3-1 is an allowed claim. With interest accrued after November 4, 2016, Claim No. 3-1 as amended by Claim No. 3-2, ought to be paid at closing. Unless and until the Superior Court judgment is vacated, that judgment is a valid claim, and it ought to be paid at closing.

B.

THE CREDIT BIDDING PROVISIONS

The provisions regarding credit bidding are now moot because BWF has filed a *Notice of Offer Selection* indicating that BWF has selected a cash offer for $3.1 million for the purchase of the Property. The court will thus dismiss the request to set aside this part of the plan without adjudicating the merits of the debtor's contention that the credit bidding provisions violate § 362(k). In the event that the cash offer falls through and credit bidding potentially may be invoked, the court will address the debtor's contentions then.[1]

However, the court has examined the issue and reached the following preliminary conclusions (which BWF should address if the issue becomes a live issue anew). BWF's Allowed Secured Claim, which the plan allows BWF to credit bid, is defined to include BWF Claim No. 3-1 plus two other components:

> BWF Claim No. 4-1 for Attorney's Fees, Expenses, and Costs. On September 2, 2016, BWF filed a claim, labeled Claim No. 4-1 on the court's Claims Register, and referred

---

[1] If credit bidding becomes a live issue in this case, the plan should be clarified that the debtor retains the right to obtain a recovery from BWF of any amounts it credit bids (in making a winning bid) and that are amounts that, under the District of Columbia Court of Appeals' disposition of the Appeal, were not owed by the debtor. But that is a moot issue at this juncture, and the parties ought to be allowed to address the framing of an order in that regard if it becomes a live issue anew.

to by the plan as BWF Claim No. 4, for $420,196.11 for "fees, expenses and other costs incurred through at least **July 31, 2016**." On November 4, 2016, BWF filed an amended claim, assigned Claim No. 4-2 on the court's Claims Register, of $980,871.51 for "fees, expenses and other costs incurred through at least **October 31, 2016** and expected to be incurred in connection with the sale of the Property and execution of the [confirmed plan]." The amended claim asserts an additional $560,675.40 in fees, expenses and other costs. The debtor has objected to this Claim No. 4-2.

BWF's Claim for Sale Costs. Under § 1.37 of the confirmed plan, Sale Costs are included in *BWF's Allowed Secured Claim*, and Sale Costs "includes the fee payable to the Broker pursuant to the Listing Agreement and all other customary transaction costs incurred by BWF in connection with the Sale of the Property." Similarly, § 5.16 provides that the Sale Costs include "the fee payable to the Broker pursuant to the Listing Agreement, the fee payable to the title insurance company and all other customary transaction costs incurred by BWF in connection with the Sale of the Property . . . ."

1. Alleged Conflict Between Credit Bidding Provision and § 8.1 of the Plan. The debtor contends:

Section 8.1 conflicts with Section 5.4 of the Confirmed Plan. Section 5.4 allows BWF to credit bid the BWF

11

> Allowed Secured Claim, despite an objection, while Section 8.1 provides that "no cash or property will be distributed under the Plan on account of the disputed portion of any Claim . . ."

Debtor's November 10, 2016 *Response* at 4 n.4. I fail to see any conflict between the provisions. Credit bidding results in satisfaction of a claim via setoff of the claim against the estate's claim for payment of the purchase price. It is not a distribution of cash or property.

The debtor contends:

> the Confirmed Plan fails to comply with Section 1123(a)(4), inasmuch as the Confirmed Plan provides BWF more favorable treatment than other similarly situated creditors. See, e.g., Section 5.4, authorizing BWF to receive cash or property under the Plan when any other disputed claim(s) is precluded by such payment under Section 8.1 of the Confirmed Plan.

November 10, 2016 *Response* at ¶ 38. This issue was not raised at the confirmation hearing and has been waived. In any event, BWF's claim was in a class unto itself, and § 1123(a)(4) requires that a plan accord the same treatment to each member of a class. Moreover, the right to credit bid was preserved for both BWF and the debtor's first mortgagee.

    2. <u>The Argument That § 5.4 of the Plan Violates 11 U.S.C. § 363(k)</u>. The debtor argues:

> 26. It is . . . in violation of Section 363(k) of the Bankruptcy Code, for a secured creditor to be permitted to credit bid when its Claim is disputed. Section 363(k) of the Bankruptcy Code permits that the holder of an "allowed claim" may credit bid. Notwithstanding Section 363(k), section 5.4 of the Confirmed Plan provides that "[n]otwithstanding . . . any

12

> objections to BWF's Allowed Secured Claim, BWF can credit bid the full amount of BWF's Allowed Secured Claim unless objected to and disallowed by the Court." BWF's Allowed Secured Claim is disputed inasmuch as the claim evidenced by Proof of Claim No. 3 is on appeal. Even if Proof of Claim No. 3 is allowed under the Rooker Feldman doctrine or under BWF's language contained in the Confirmed Plan, Proof of Claim No. 4 is not an allowed claim. The Debtor has filed a formal objection to Proof of Claim No. 4 (though it was widely known that the Debtor objected to BWF's entire Allowed Secured Claim at the time the Confirmation Order was entered), and BWF should not be permitted to credit bid on the Property.

Under the *Rooker-Feldman* doctrine, the court must treat BWF's Claim No. 3-1 for the Superior Court judgment amount (and any accrued interest thereon) as an allowed secured claim under 11 U.S.C. § 506(a). It was appropriate to allow credit bidding under § 363(k) of Claim No. 3-1, the claim for $1,343,098.11 plus subsequent interest that accrues thereon.

Claim No. 4-1 (referred to as BWF's Claim No. 4 in the plan) was filed on September 2, 2016, setting forth BWF's fees, expenses and other costs through July 31, 2016. The confirmation hearing regarding BWF's plan was held on October 20, 2016. The debtor did not object to Claim No. 4-1 prior to the confirmation hearing. Accordingly, as of the confirmation hearing, Claim No. 4-1 *was* an allowed claim. The plan treated Claim No. 4-1 as an allowed claim for purposes of credit bidding under § 363(k), and

the debtor did not object to that provision.[2]

The debtor's *Reconsideration Motion* did not contend that the credit bidding provision was invalid, and the belated raising of that contention on November 10, 2016, amounts to a Rule 60(b) motion. The *Reconsideration Motion* contended that:

- the plan failed to preserve the fruits of any success by the debtor in the Appeal; and

- the debtor is required to sell and vacate the Property "under conditions that are onerous, unreasonable, unnecessary, and will not result in maximizing the

---

[2] There may have been good reasons not to object to Claim No. 4-1 and the plan's credit bidding provision regarding Claim No. 4-1:

- Between July 31, 2016, and October 20, 2016, as the docket sheet reflects, BWF engaged in litigation in the case that obviously resulted in BWF incurring substantial additional attorneys' fees in the case beyond any incurred through July 31, 2016. Accordingly, even if the debtor had questions about the $420,196.11 for "fees, expenses and other costs incurred through at least **July 31, 2016**" claimed on Claim No 4-1, the debtor's then-attorney may have concluded that through **October 20, 2016**, BWF had incurred at least $420,196.11 in fees, expenses and other costs.

- In any event, the debtor's then-attorney may have viewed BWF as capable of refunding to the debtor any amount that it credit-bid and that was later disallowed as a claim in the case. If he had a concern in that regard, the debtor could have objected that the credit bidding of Claim No. 4-1 should be conditioned on BWF providing a letter of credit, surety bond, or other instrument of the like, as approved by the court, in the amount of its proposed credit bid. *See In re RML Dev., Inc.*, 528 B.R. 150, 157 (Bankr. W.D. Tenn. 2014).

value of the Property."

As to the *Reconsideration Motion*'s first contention, any objection to credit bidding of Claim No. 4-1 that is based on a possible successful outcome of the Appeal is at this juncture (that is, unless and until the Appeal is decided) barred by the *Rooker-Feldman* doctrine and issue preclusion principles. Similarly, the contention regarding the onerous, unreasonable, and unnecessary conditions of the sale was not a contention that the plan's provision regarding credit bidding Claim No. 4-1 violated § 362(k). The argument that credit bidding of Claim No. 4-1 should not be allowed because it violates § 362(k) is a new argument that must be treated as a Rule 60(b) motion.

The debtor has not shown adequate cause to grant Rule 60(b) relief. However, even if I treat the contention regarding credit bidding as falling within Rule 59(e), the motion must be denied in that regard because she has waived the contention by failing to raise it at the confirmation hearing.[3]

Under *Kattan*, 995 F.2d at 276, the debtor may not use a Rule 59 motion to raise a new issue that she could have raised at the confirmation hearing. In any event, even if the issue had not

---

[3] The debtor had adequate notice of the treatment of Claim No. 4-1 as an allowed claim that could be credit bid. That treatment was included in a plan BWF filed on September 15, 2016, more than a month before the confirmation hearing, and each subsequent version of the plan, including the confirmed plan at issue here, included that treatment.

15

been waived, the debtor has not shown a need to correct clear error or manifest injustice as would warrant Rule 59(e) relief. As of the confirmation hearing, the debtor had not objected to Claim No. 4-1.  Accordingly, as of the confirmation hearing Claim No. 4-1 was an allowed claim under 11 U.S.C. § 502(a) (providing that a claim, proof of which is filed under 11 U.S.C. § 501, "is deemed allowed, unless a party in interest . . . objects").  The plan treated Claim No. 4-1 as an allowed claim for credit bidding purposes but not for distribution purposes.  Before the hearing, the debtor could have objected to the claim and to the plan provision allowing credit bidding of Claim No. 4-1 as an allowed claim.  She failed to do so, and it was not error for the court to treat the claim as an allowed claim that could be credit bid. Had the debtor raised an objection to the claim, BWF could have asked for an expedited schedule to obtain an adjudication fixing the allowed amount of Claim No. 4-1 in order to permit credit bidding.

However, Claim No. 4-2 had not been filed as of the confirmation hearing.  The debtor could not have objected to that claim, and cannot be deemed to have waived any objection to credit bidding of that claim based on the claim not being an allowed claim once she objected to it.  Under the plan, *BWF's Allowed Secured Claim* "includes . . . Claim No. 4 [*i.e.*, Claim No. 4-1] filed by BWF in the amount of $420,196.11 as of July 31,

16

2016 . . . ." The plan did note that BWF reserved the right to amend Claim No. 4-1, but it did not provide that any additional fees and expenses asserted in an amended claim would be included as a part of *BWF's Allowed Secured Claim*. Moreover, the debtor could not know what additional amounts BWF might assert. The debtor retained the right to object to BWF's claims, but with respect to Claim No. 4-1, the plan provided that, for credit bidding purposes, that $420,196.11 claim would be treated as an allowed claim. The plan did not provide that additional fees and expenses asserted in an amendment of Claim No. 4-1 were to be treated as an allowed claim that could be credit bid. The debtor cannot be deemed to have waived an argument that BWF ought not be allowed to credit bid the claim, not yet asserted by BWF as of the confirmation hearing, for an additional $560,675.40 in Claim No. 4-2, a claim to which the debtor has objected. The plan ought not be treated as allowing credit bidding of the additional $560,675.40 sought in Claim No. 4-2 so long as the objection to Claim No. 4-2 has not been overruled or dismissed.

   3. <u>Credit Bidding of BWF's Claim for Sale Costs</u>. The debtor contends that the plan included Sale Costs as part of *BWF's Allowed Secured Claim* that can be credit bid with the intention of inflating *BWF's Allowed Secured Claim* so that BWF can ensure that BWF is the highest bidder for the Property. Under the listing agreement with its broker, BWF is required to

17

pay the Sale Costs.  Under § 506(a) of the Bankruptcy Code, those costs, when paid, will be part of BWF's allowed secured claim. It makes sense that BWF should be allowed to credit bid those amounts, but not if they are paid from the proceeds of the sale, and if credit bidding becomes a  , the plan ought to be clarified in that regard.

V

OTHER ARGUMENTS RAISED BY<br>DEBTOR'S <em>RESPONSE</em> OF NOVEMBER 10, 2016

The debtor's November 10, 2016 *Response* argues:

> 28.  Finally, the Confirmed Plan's requirement that the Debtor vacate the Property that she rightfully owns prior to any closing is highly unusual, if not unconstitutional.  There is no basis that the Debtor can or should be deprived of Property that she rightfully owns prior to a sale or eviction authorized under applicable law.  Until such time as the Property is sold, the Debtor is entitled to retain possession of her Property under applicable federal and state law.

Under 11 U.S.C. § 105(a), the court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," and under 11 U.S.C. § 1123()(5), a plan shall "provide adequate means for the plan's implementation . . . ."  The requirement that the debtor vacate the Propery ahead of the sale being closed was necessary and appropriate to assure that upon closing of the sale the Property the Property would be vacant.  The Bankruptcy Code permits an alteration of the debtor's rights of occupancy.

The debtor's other arguments in the November 10, 2016

18

*Response* are similarly unpersuasive.  As to the debtor's request for a stay pending an appeal of the confirmation order, I adhere to the views I expressed in the November 8, 2016 *Order*:

> As to a stay of the court's confirmation order, the absence of a likelihood of success on appeal dooms the stay request.  Moreover, the balance of harms favors denying a stay.  The harm to BWF of a stay is that it would put into jeopardy the procedures BWF has in place under the plan to assure that the property is sold, a set of sale procedures it fought hard to secure.  The evidence is that, with colder weather and the holiday season approaching, there is a very short window of opportunity within which to accomplish a sale at the optimal price. Stopping the broker's sales efforts in their tracks would obviously be potentially quite harmful, both to BWF and to the debtor. Moreover, staying the confirmation order would likely lead to additional attorney's fees being incurred in the case, which would only serve to reduce whatever equity exists in the property.  The public interest weighs in favor of allowing BWF to proceed with a sale under its confirmed plan when the debtor has shown no error in the court's confirming that plan's provisions regarding a sale.

VI

In accordance with the foregoing, it is

ORDERED that neither the confirmed BWF Plan nor the order confirming the plan (the "Confirmation Order"), bar any challenge by the debtor in her Appeal in the District of Columbia Court of Appeals to any aspect of the subject Judgment entered by the Superior Court of the District of Columbia in BWF's favor; and neither the confirmed BWF Plan nor the Confirmation Order shall impair or alter the rights of the debtor, to the extent such rights exist under District of Columbia or any other applicable law, including the right to recover from BWF or any other party

(if such rights exist under District of Columbia or applicable law), if the Debtor obtains a reversal of the Superior Court Judgment.  It is further

ORDERED that the *Reconsideration Motion* (Dkt. No. 219) as supplemented by the November 10, 2016 *Response* (Dkt. No. 230) is dismissed as moot with respect to the contentions regarding credit bidding, without adjudicating the merits of those contentions.  It is further

ORDERED that, except as set forth above, the *Reconsideration Motion* (Dkt. No. 219) as supplemented by the November 10, 2016 *Response* (Dkt. No. 230) is DENIED.

[Signed and dated above.]

Copies to: Recipients of e-notice of orders through CM/ECF.